[No. 83867-4. En Banc.]
Argued February 17, 2011.    Decided May 12, 2011.

JOSHUA HARRIS, *Petitioner*, v. THE HONORABLE EDSONYA
CHARLES, *as Presiding Judge of the Seattle
Municipal Court*, ET AL., *Respondents*.

*Christine A. Jackson* and *Kristen V. Murray* (of *The Defender Association*), for petitioner.

*Peter S. Holmes, City Attorney,* and *Richard E. Greene, Assistant,* for respondents.

*Travis Stearns* on behalf of Washington Defender Association, amicus curiae.

¶1 WIGGINS, J. — Washington's Criminal Rules authorize a trial judge to release a person before trial subject to electronic home monitoring (EHM). If convicted of a felony, the defendant is entitled to have the days spent on pretrial EHM credited against any sentence of confinement. Petitioner Joshua Harris pleaded guilty to two misdemeanors and seeks credit for time spent on EHM, arguing that allowing EHM credit for felons but not misdemeanants violates his right to equal protection of the law.

¶2 We hold that there are rational bases for treating felons and misdemeanants differently when crediting EHM: granting EHM credit would hamper the ability of misdemeanor sentencing judges to order jail time, given the typically shorter sentences for misdemeanors compared to

felonies; misdemeanor sentencing courts have much greater discretion than felony sentencing courts to issue sentences and impose conditions designed to promote rehabilitation, a goal of misdemeanor, but not felony, sentencing. Finally, some misdemeanor sentencing statutes and ordinances (including the ordinance at issue here) provide for a combination of time spent in jail and time spent on EHM; allowing pretrial EHM credit would undermine the distinction between the two types of confinement. We affirm the decision of the Court of Appeals reversing the superior court's order awarding credit against jail time for pretrial EHM time.

## FACTS

¶3 On October 19, 2007, Harris was charged in Seattle Municipal Court with driving with license suspended in the third degree (DWLS 3rd) and driving without a required ignition interlock device (IID).[1] The court set bail at $5,000, which Harris posted, and additionally required Harris to comply with EHM conditions. Harris's EHM began October 22, 2007. On January 7, 2008, Harris pleaded guilty to DWLS 3rd and IID misdemeanors. Also on January 7, Harris moved for his sentencing to be delayed 60 days; the city of Seattle (the City) did not object. The court granted the motion for delayed sentencing, and Harris remained on presentencing release subject to EHM.

¶4 Harris's EHM requirements ended on the date of his sentencing, March 7, 2008, when Seattle Municipal Court Judge Edsonya Charles sentenced him to 90 days in jail and a $1,000 suspended fine for DWLS 3rd. On the IID charge, the court sentenced Harris to 90 days in jail, with 90 days

---

[1] Harris has two prior convictions for driving under the influence (DUI). In 2001, Harris was charged in Seattle Municipal Court with DUI and driving with license suspended in the first degree. Harris entered into a deferred prosecution agreement for those charges, which was revoked when he was later convicted of DUI in the city of Renton. The Seattle Municipal Court imposed a suspended sentence, dependent on Harris's compliance with certain conditions, including no drug or alcohol-related offenses and no driving with an invalid license.

suspended, and a $1,000 fine, with $800 suspended. The court declined to give Harris credit against his 90-day jail sentence for the 140 days he spent on EHM prior to sentencing. The court ordered Harris to report to jail on April 9, 2008.

¶5 On March 31, 2008, Harris petitioned the King County Superior Court for a writ of habeas corpus, alleging unlawful restraint because the sentencing court did not give him credit for his time on EHM. Harris, a misdemeanant, claimed the failure to credit his EHM time violated his equal protection rights because the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, requires courts to give such credit to felons. On April 7, 2008, the King County Superior Court granted the writ and ordered the Seattle Municipal Court to credit Harris for 90 days he was on EHM. The order stated:

> **RCW 9.94A.120(16), RCW 9.94A.030(8)[,] (26) and (42)** states [sic] that a criminal defendant is entitled to credit against sentence for pretrial time spent on electronic home detention. I find that the rule albeit for felonies shall apply here.

Clerk's Papers at 38. The Seattle Municipal Court complied with the order on April 8, 2008, and credited Harris with 90 days against his 90-day jail sentence for DWLS 3rd. The City filed a timely notice of appeal on May 8, 2008.

¶6 The Court of Appeals reversed the order. *Harris v. Charles*, 151 Wn. App. 929, 214 P.3d 962 (2009). The court held that Harris was sufficiently restrained to seek a writ of habeas corpus but that he had no expectation of finality in his sentence for purposes of double jeopardy because the City filed a timely appeal of the order. *Id.* at 934, 936. The court also held that denying a misdemeanant credit for EHM time did not violate equal protection or double jeopardy principles. *Id.* at 939-41. This court granted Harris's petition for review, 168 Wn.2d 1031, 230 P.3d 1061 (2010), and we now affirm the Court of Appeals' reversal of the superior court's order.

## ANALYSIS

¶7 "Every person restrained of his liberty under any pretense whatever, may prosecute a writ of habeas corpus to inquire into the cause of the restraint, and shall be delivered therefrom when illegal." RCW 7.36.010. A petitioner seeking a writ of habeas corpus raises a collateral attack and bears a higher burden than on direct appeal. *In re Pers. Restraint of Mulholland*, 161 Wn.2d 322, 332, 166 P.3d 677 (2007). A petitioner raising a collateral attack claiming a constitutional error must show actual and substantial prejudice. *Id.* at 331-32. Our review of constitutional questions and a superior court's issuance of a writ is de novo. *State v. Schaler*, 169 Wn.2d 274, 282, 236 P.3d 858 (2010); *Commanda v. Cary*, 143 Wn.2d 651, 654, 23 P.3d 1086 (2001).

### I. The City's appeal was not moot

¶8 Harris argues the City's appeal of the order granting the writ of habeas corpus was moot because he had an expectation of finality in his sentence and, regardless of the disposition on appeal, he could not be resentenced without violating double jeopardy principles. "What matters for purposes of double jeopardy is not the legality or illegality of the sentence . . . , but the defendant's expectation of finality." *State v. Hardesty*, 129 Wn.2d 303, 315, 915 P.2d 1080 (1996). A defendant's expectation of finality is influenced by factors such as completion of the sentence, passage of time, pendency of an appeal or review of the sentence, or a defendant's misconduct in obtaining the sentence. *Id.* at 311. "Defendants are charged with knowledge of a statutory period in which review of a sentence may be sought." *Id.* at 315 (citing *United States v. DiFrancesco*, 449 U.S. 117, 136-37, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980)).

¶9 The superior court issued the order granting the writ on April 7, 2008. The Seattle Municipal Court complied

with the order and on April 8 granted Harris credit against his 90-day jail sentence. The City filed a timely notice of appeal on May 8, 2008. Harris remained on probation until at least August 2010, and his 90-day jail sentence for IID remained suspended. Harris claims the City's appeal of the order was moot because it did not seek a stay of the order pending its appeal and because Harris completed his sentence as soon as the Seattle Municipal Court credited his jail sentence. This argument is unpersuasive because the City timely appealed the order. Any expectation of finality Harris had in his sentence was limited by the short passage of time between his sentencing and the City's timely appeal. Harris did not have a legitimate expectation of finality in his sentence for purposes of double jeopardy. The City's appeal of the order granting the writ of habeas corpus was not moot.

II.   Denying Harris credit for time on EHM does not violate equal protection

■ ¶10 Harris claims that denying him credit for time served on presentencing EHM violates his equal protection rights because felony and juvenile defendants receive such credit pursuant to statute. Equal protection requires that similarly situated individuals receive similar treatment under the law. *See* U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 12. Equal protection provides equal application of law but does not provide complete equality among individuals or classes of individuals. *State v. Simmons*, 152 Wn.2d 450, 458, 98 P.3d 789 (2004).

> In order to determine whether the equal protection clause has been violated, one of three tests is employed. First, strict scrutiny is applied when a classification affects a fundamental right or a suspect class. Second, intermediate scrutiny is applied when a classification affects both a liberty right and a semi-suspect class not accountable for its status. The third test is rational basis. Under this inquiry, the legislative classification is upheld unless the classification rests on grounds wholly irrelevant to the achievement of legitimate state objectives.

*State v. Harner*, 153 Wn.2d 228, 235-36, 103 P.3d 738 (2004).

¶11 Harris concedes his claim warrants rational basis review because it does not involve a suspect or semisuspect class or a fundamental right.[2] Pet'r's Suppl. Br. at 3. Under rational basis review, "[a] party challenging the application of a law as violating equal protection principles has the burden of showing that the law is irrelevant to maintaining a state objective or that it creates an arbitrary classification." *Simmons*, 152 Wn.2d at 458. Rational basis review is a deferential standard of review. *DeYoung v. Providence Med. Ctr.*, 136 Wn.2d 136, 144, 960 P.2d 919 (1998). Harris has the burden of showing the classification between felons and misdemeanants for purposes of granting credit for EHM is not rationally related to a legitimate government interest.

¶12 Harris argues the different sentencing treatment of misdemeanor defendants fails rational basis review. The SRA requires a sentencing court to credit a felony defendant's sentence for presentence time spent in "confinement." RCW 9.94A.505(6). " 'Confinement' " includes "partial confinement," which in turn includes "work release" and "home detention." RCW 9.94A.030(8), (34). " 'Home detention' means a program of partial confinement available to offenders wherein the offender is confined in a private residence subject to electronic surveillance." RCW 9.94A.030(28). Thus, the SRA requires courts to credit

---

[2] This is consistent with previous cases involving defendants' equal protection claims. For example, rational basis review applied to a felony defendant's claim that equal protection required a sentencing court to credit him for time spent on EHM while he was released pending an appeal. *State v. Anderson*, 132 Wn.2d 203, 209, 213, 937 P.2d 581 (1997) (citing *In re Pers. Restraint of Borders*, 114 Wn.2d 171, 176, 786 P.2d 789 (1990) (holding that following a valid judgment and sentence a petitioner has a "conditional liberty interest")). *But see State v. Phelan*, 100 Wn.2d 508, 514, 671 P.2d 1212 (1983) (*Phelan* II) ("Since a denial of credit for presentence jail time involves both a deprivation of liberty in addition to that which would otherwise exist, and a classification based solely on wealth, we will apply an intermediate level of scrutiny in the present case.").

felony defendants' sentences for time served on EHM.[3] There is no corresponding statutory basis for requiring courts to grant credit to misdemeanants for time served on presentencing EHM.

¶13 The sentencing schemes for misdemeanants and felons are distinct. *See Harris*, 151 Wn. App. at 937; *see also Wahleithner v. Thompson*, 134 Wn. App. 931, 939, 941, 143 P.3d 321 (2006) (noting a comparison of misdemeanor sentences and felony sentences under the SRA "is of very limited utility"). Maintaining the distinct treatment of misdemeanants and felons for purposes of sentencing credit rationally relates to at least two legitimate government interests. First, declining to credit misdemeanants for presentencing time on EHM preserves jail time as a sentencing option. There is a large disparity in sentencing consequences for misdemeanor and felony offenses. Unless provided otherwise by statute, the maximum penalty for a misdemeanor is 90 days in jail and a $1,000 fine. RCW 9A.20.021(3); RCW 9.92.030. Even for a gross misdemeanor, the default maximum penalty is one year in jail and a $5,000 fine. RCW 9A.20.021(2). In contrast, the default maximum penalty for a felony offense is 10 years in a state correctional institution and a $20,000 fine. RCW 9.92.010. Of course, a felony sentence under the SRA may be much greater; a felon may be sentenced to life or to the death penalty. RCW 9.94A.510.

¶14 A felony defendant who receives credit for presentencing EHM will frequently be subject to a lengthy prison sentence. But requiring a court to give credit to a

---

[3] In *State v. Speaks*, 119 Wn.2d 204, 829 P.2d 1096 (1992), this court reviewed a Court of Appeals holding that denying a felony defendant credit for EHM time was constitutional. This court reversed on statutory grounds, stating, "While the Court of Appeals conclusion that presentence home detention is not *constitutionally* mandated may well be correct, we deem it unnecessary to reach that issue in this case since state statutes resolve the question." *Id.* at 207 (footnote omitted).

Similar provisions in the Juvenile Justice Act of 1977, chapter 13.40 RCW, entitle juvenile offenders to credit for time served on EHM. *See* RCW 13.40.020(5), (9), .160(9). The Court of Appeals, relying on *Speaks*, has held, "[W]e see no reason . . . why adults should receive credit and juveniles should not." *State v. Ashbaker*, 82 Wn. App. 630, 633, 919 P.2d 619 (1996).

misdemeanor defendant for presentencing EHM time could significantly affect the court's discretion to impose jail time at the defendant's sentencing. Such a requirement would tie the hands of a court sentencing a misdemeanor defendant, such as Harris, who had served more than 90 days on EHM. As the Court of Appeals noted, "Rather than lose the option of ensuring that jail time is included in the sentence for such a [misdemeanant], the court might well decide to hold him in jail pending trial." *Harris*, 151 Wn. App. at 938. Not requiring credit for a misdemeanant's presentencing time on EHM serves the legitimate state interest of preserving jail time as a possible sentence for misdemeanor defendants.

¶15 Second, the distinct treatment of misdemeanants and felons for purposes of sentencing credit rationally relates to maintaining the traditional discretion that courts have when sentencing a misdemeanor offender. *See Wahleithner*, 134 Wn. App. at 939, 941. Misdemeanor sentencing courts have the discretion to issue suspended sentences or to impose sentences and conditions with "carrot-and-stick incentive[s]" to promote rehabilitation, a goal of nonfelony sentencing. *Id.* at 941; *see also State v. Williams*, 97 Wn. App. 257, 263-63, 983 P.2d 687 (2000). In contrast, the SRA has limited felony sentencing courts' discretion. *See Wahleithner*, 134 Wn. App. at 939, 941. Though a sentence imposed pursuant to the SRA might present a felony defendant with the opportunity to improve himself, rehabilitation is not a justification for sentencing under the SRA. *State v. Barnes*, 117 Wn.2d 701, 711, 818 P.2d 1088 (1991); *see also* RCW 9.94A.010 (purposes of the SRA). The different treatment of felons and misdemeanants when granting sentencing credit serves the legitimate government interest in maintaining the purpose and discretion of misdemeanor sentencing.

¶16 Moreover, requiring courts to grant credit for presentencing time on EHM against a misdemeanant's jail sentence would undermine the distinction the legislature set forth in misdemeanor sentencing rules between time served

on EHM and time in jail. We note with approval the Court of Appeals decision in *City of Bremerton v. Bradshaw*, 121 Wn. App. 410, 88 P.3d 438 (2004), in which the defendant was sentenced under RCW 46.61.5055 to 120 days in jail and 150 days on EHM after being on EHM for 240 days prior to trial. The municipal court granted the defendant credit for her time on EHM against the EHM portion of her sentence but declined to grant her credit against her mandatory jail sentence. *Id.* at 411-13. The Court of Appeals affirmed the sentence, holding that RCW 46.61.5055 "plainly treats jail time and EHM time separately." *Id.* at 412.[4]

¶17 Rational basis review is a highly deferential standard, and it is the rare classification that is found unconstitutional under this standard.[5] *See DeYoung*, 136 Wn.2d at 144. Harris has not shown that the classification between felons and misdemeanants for purposes of granting sentencing credit for time on EHM is irrelevant to a legitimate government purpose.

---

[4] Under RCW 46.61.5055 a defendant convicted of DUI without a prior offense in the past seven years must be sentenced to at least 24 hours of imprisonment. The court may order 15 days of EHM in lieu of the mandatory minimum term of imprisonment. RCW 46.61.5055(1)(a)(i). A person with two or three prior offenses within the past seven years must be sentenced to at least 90 days of imprisonment and 120 days of EHM. RCW 46.61.5055(3)(a)(i). Paralleling RCW 46.61.5055, the Seattle Municipal Code (SMC) makes the same distinction between time on EHM and time in jail. SMC 11.56.025. Requiring courts to grant misdemeanants jail time credit for presentencing time on EHM would force courts to calculate equivalencies between jail and EHM under the sentencing statutes. Misdemeanants' EHM time could also be subject to good time credit, further reducing sentencing courts' discretion to impose jail sentences for misdemeanor offenses.

[5] We have held that certain classes of defendants must be treated equally for purposes of sentence credit requirements. *See Anderson*, 132 Wn.2d at 212 (holding defendants on pretrial EHM and defendants on postconviction EHM must be treated equally); *In re Pers. Restraint of Phelan*, 97 Wn.2d 590, 595-96, 647 P.2d 1026 (1982) (*Phelan* I) (holding defendants in detention as a condition of postconviction probation and defendants in detention prior to trial must be treated equally); *Reanier v. Smith*, 83 Wn.2d 342, 351, 517 P.2d 949 (1974) (holding defendants in pretrial detention and defendants in postconviction detention must be treated equally). Though these cases demonstrate that all defendants must be given credit for presentencing *detention* time and that felony defendants must be given credit for time on EHM pursuant to the SRA, they do not support Harris's argument that misdemeanants must be treated similarly to all other defendants for crediting purposes.

III.  Denying Harris credit for time served on EHM does not violate double jeopardy protections

¶18  The Fifth Amendment to the federal constitution[6] and article I, section 9 of our state constitution[7] provide a prohibition against double jeopardy that protects a defendant from multiple punishments for the same offense. *State v. McClendon*, 131 Wn.2d 853, 862, 935 P.2d 1334 (1997) (citing *United States v. Halper*, 490 U.S. 435, 440, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989), *abrogated on other grounds by Hudson v. United States*, 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997)). This court employs a two-part test to determine whether a government action is punitive. *State v. Catlett*, 133 Wn.2d 355, 366, 945 P.2d 700 (1997). We first look to the express or implied intent of the government sanction. *Id.* at 365. If its intent is not punitive, then the analysis turns on whether the sanction's purpose or effect nevertheless is so punitive as to negate that intent. *Id.*; *see also McClendon*, 131 Wn.2d at 870 (Talmadge, J., concurring) ("The present case rises and falls on a single question: is the [state] action punishment? If it is punishment, jeopardy attaches.").

A. Intent of CrRLJ 3.2 and CrR 3.2

¶19  Harris was sentenced in a court of limited jurisdiction and released pending sentencing pursuant to CrRLJ 3.2. We examine CrR 3.2, the rule for superior courts, because CrRLJ 3.2 is the nearly identical rule for district courts. CrR 3.2 does not describe bail or other conditions of pretrial release as punitive measures. The rule creates a presumption that a court will release a defendant on personal recognizance after his preliminary hearing or

---

[6] This provision applies to states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

[7] We interpret article I, section 9 and the Fifth Amendment equivalently. *See State v. Unga*, 165 Wn.2d 95, 196 P.3d 645 (2008).

appearance.[8] CrR 3.2(a). If the court determines that personal recognizance will not assure the defendant's appearance at future court proceedings or if there is a likely danger the defendant will commit a violent crime, seek to intimidate witnesses, or "otherwise unlawfully interfere with the administration of justice," then the court will impose bail or conditions of release. CrR 3.2(a)(1)-(2). CrR 3.2(b) requires the court to impose the least restrictive conditions necessary, including:

(1) Place the accused in the custody of a designated person or organization agreeing to supervise the accused;

(2) Place restrictions on the travel, association, or place of abode of the accused during the period of release;

. . . .

(6) Require the accused to return to custody during specified hours or to be placed on electronic monitoring, if available; or

(7) Impose any condition other than detention deemed reasonably necessary to assure appearance as required.

The language of CrR 3.2 does not indicate these pretrial release conditions are punitive.

¶20 The history of CrR 3.2, a rule originally drafted to overhaul the monetary bail system, confirms that conditions of pretrial release were not intended to be punitive. Rather, comments to the original rule demonstrate that the drafters intended pretrial release to alleviate some of the burdens imposed upon an accused individual awaiting trial in jail. The comments observe that a defendant in pretrial detention "is severely handicapped in his defense preparation" and "is often unable to retain his job and support his family, and is made to suffer the public stigma of incarceration even though he may later be found not guilty." CRIMINAL RULES TASK FORCE, WASHINGTON PROPOSED RULES OF CRIMINAL PROCEDURE Rule 3.2 cmt. at 22 (1971). CrR 3.2 was meant to alleviate these burdens.

---

[8] Rules governing pretrial release implement the constitutional guaranty of release on bail, unless the defendant is charged with a capital crime. *See* WASH. CONST. art. I, § 20.

¶21 As a condition of pretrial or presentencing release, EHM addresses these concerns and furthers the intent of the original pretrial release rule because a defendant on EHM may visit his attorney and continue to go to a job.[9] *State v. Perrett*, 86 Wn. App. 312, 318-19, 936 P.2d 426 (1997). A 2002 amendment to CrR 3.2 added electronic monitoring as a possible condition of pretrial release. The Minority and Justice Commission proposed the amendments to address reports that court rules governing pretrial release "may discriminate against persons who are economically disadvantaged." Proposed amendment to CrR 3.2, 145 Wn.2d Proposed-67 (Official Advance Sheet No. 4, Jan. 8, 2002). The purpose of the amendment's restructuring of CrR 3.2 (and its counterpart CrRLJ 3.2) was

> to separate out the three broad issues a judge is directed to consider for pretrial release; that is, whether the accused is likely to appear at future hearings, whether there is a likely danger that the accused will commit a violent crime, and whether the accused will seek to intimidate witnesses or otherwise interfere with the administration of justice.

*Id.* at Proposed-68. These comments demonstrate that the purpose of pretrial release conditions, including EHM, is not punishment.[10]

---

[9] The Seattle Municipal Court originally granted Harris work release but revoked that condition upon learning that Harris was unemployed. The record does not provide any other details of Harris's EHM release terms.

[10] EHM is a punitive option for courts imposing sentences for certain misdemeanors. *See, e.g.*, RCW 46.61.5055(1)(a)(i) (allowing courts to sentence first-time gross misdemeanor DUI offenders to 15 days of EHM in lieu of 1 day in jail; *see also State v. Anderson*, 151 Wn. App. 396, 406, 212 P.3d 591 (2009) (allowing courts to convert term of imprisonment for a DWLS conviction to EHM). However, when EHM is imposed as a condition of pretrial release pursuant to CrR 3.2 or CrRLJ 3.2, it is not intended as punishment but rather as a means of alleviating the burdens of pretrial detention and of assuring the defendant's future appearance in court.

### B. Purpose and effect of EHM

¶22 Because CrR 3.2 is not punitive in its intent, we next turn to whether the purpose or effect of imposing presentencing EHM is so punitive as to overcome that intent. *See Catlett*, 133 Wn.2d at 365. Determining whether a state has imposed a punishment can be "extremely difficult and elusive of solution." *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963). That a government action has a deterrent effect does not automatically render the action punitive. *See McClendon*, 131 Wn.2d at 866. Nor is an action punitive because the defendant perceives it to be so. *Id.* at 866-67. A defendant must present clear proof that a sanction not labeled as punitive is still so punitive as to be subject to the double jeopardy prohibition against multiple penalties. *See Catlett*, 133 Wn.2d at 367-68.

¶23 When determining whether a defendant is constitutionally entitled to credit for presentencing time spent subject to restrictive conditions, this court has recognized a clear distinction between jail time and nonjail time. *See In re Pers. Restraint of Knapp*, 102 Wn.2d 466, 471, 687 P.2d 1145 (1984). For example, a defendant is not constitutionally entitled to credit for nonjail time served on probation, despite possibly severe restrictions imposed on the defendant's liberty. *In re Pers. Restraint of Phelan*, 97 Wn.2d 590, 597-98, 647 P.2d 1026 (1982) (*Phelan* I); *Knapp*, 102 Wn.2d at 471. Also, this court has acknowledged that credit for home detention time might not be constitutionally required. *State v. Speaks*, 119 Wn.2d 204, 207, 829 P.2d 1096 (1992) ("While the Court of Appeals conclusion that presentence home detention is not *constitutionally* mandated may well be correct, we deem it unnecessary to reach that issue in this case since state statutes [the SRA] resolve the question." (footnote omitted)).

¶24 In contrast, principles of equal protection and double jeopardy demand that all defendants receive credit for time spent in incarceration prior to sentencing. *Reanier v. Smith*,

83 Wn.2d 342, 351-52, 517 P.2d 949 (1974).[11] Time in incarceration includes mandatory time spent in a state mental hospital. *See Knapp*, 102 Wn.2d at 475 ("[L]ike confinement in a prison or jail, a person committed to a mental hospital pursuant to a valid criminal conviction is subject to a massive curtailment of liberty."). *But see Makal v. Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976) (holding time spent in a state mental hospital was not intended as "punishment for the commission of a crime" and, thus, was not confinement and did not require credit).

¶25 Thus, for purposes of requiring credit for nonjail time, our case law reveals a constitutional distinction between liberty restrictions equal to time spent in jail or prison, *see Knapp*, 102 Wn.2d at 475, and less substantial liberty curtailments. *See Phelan* I, 97 Wn.2d at 597-98 (rejecting argument that defendant must be credited for time on probation, despite possibly "severe restrictions"); *see also United States v. Woods*, 888 F.2d 653, 655 (10th Cir. 1989) (holding a defendant is entitled to credit for time spent in custody only when the custody imposed both a severe restriction of liberty and the punishment of incarceration).[12]

---

[11] *Reanier* followed the reasoning of *Culp v. Bounds*, 325 F. Supp. 416 (D.N.C. 1971). The court in *Culp* stated, "Pre-trial detention is nothing less than punishment. An unconvicted accused who is not allowed or cannot raise bail is deprived of his liberty." *Id.* at 419. This statement is consistent with our distinction between jail time and nonjail time because the issue in *Culp* was whether the defendant should receive credit for 40 days in jail served prior to sentencing. *See id.* at 418.

[12] Other courts have been asked to give credit for presentencing time spent on EHM, on home detention, or in residential treatment programs. *See generally* George L. Blum, *Defendant's Right to Credit for Time Spent in Halfway House, Rehabilitation Center, or Similar Restrictive Environment as Condition of Pretrial Release*, 46 A.L.R.6TH 63 (2009). Most jurisdictions have analyzed whether credit was required under a state's sentencing statutes. *See, e.g., Commonwealth v. Morasse*, 446 Mass. 113, 121, 842 N.E.2d 909 (2006) (holding " 'confinement' " under the credit statute does not include EHM time); *State v. Rauch*, 94 Haw. 315, 326, 13 P.3d 324 (2000) (holding time in a " 'state or county correctional institution' " under the credit statute does not include time in home detention (quoting Haw. Rev. Stat. § 706-623(2))); *Bush v. State*, 338 Ark. 772, 775, 2 S.W.3d 761 (1999) (holding " 'custody' " under the statute did not include home monitoring); *Dedo v. State*, 343 Md. 2, 8, 680 A.2d 464 (1996) (holding " 'custody' " included time spent in home detention because failure to comply with detention agreement would constitute crime of escape); *State v. Climer*, 127 Idaho 20, 21-22, 896 P.2d 346

¶26 The Court of Appeals has held that EHM is not equivalent to incarceration for purposes of the speedy trial rule because the conditions of release "essentially eliminate[ ] the hardships associated with incarceration." *Perrett,* 86 Wn. App. at 318. The defendant in *Perrett* was allowed to visit his attorney to help prepare his defense and to do personal errands on those trips. *Id.* at 318-19. The defendant, though confined to his home because he was unemployed, was free to live largely as he had before he was charged, and he "suffered neither the stigma nor the discomfort of jail while on EHM." *Id.* at 319.

¶27 The record does not describe the specific conditions of Harris's time on EHM. Other than asserting EHM constitutes punishment because it imposes liberty restrictions, Harris does not explain how his time on EHM was so punitive in effect as to overcome its intended nonpunitive purpose.[13] Harris's conditions of EHM release appear to be equivalent to those in *Perrett* where the Court of Appeals found the defendant's conditions of release on EHM easily distinguishable from incarceration. In fact, by moving for delayed sentencing, Harris voluntarily extended his time on EHM, permitting him to continue to live his life largely as he had prior to being charged, subject to conditions that restricted his movement outside his home and that prohibited him from using drugs and alcohol.[14]

---

(1995) (holding "incarceration" does not include house arrest). These cases do not address federal or state constitutional claims.

[13] Conceding that EHM does not present the same hardships as jail, Harris argues that his time on EHM was nonetheless punitive because he could be charged with escape if he violated his conditions of release. We need not decide in this case whether a misdemeanor defendant's failure to comply with presentencing EHM release conditions could constitute second or third degree escape under chapter 9A.76 RCW. Harris has not shown that a government sanction is so punitive as to trigger double jeopardy protections simply because an individual faces possible criminal consequences for failing to comply with the sanction.

[14] To support his argument that presentencing EHM is equivalent to confinement, Harris cites a 1999 amendment to RCW 46.61.5055, the statute that provides the penalties for DUI. Prior to the amendment, the statute stated, " 'Electronic home monitoring' shall not be considered confinement as defined in RCW 9.94A.030." Former RCW 46.61.5055(8)(a) (1998). Harris argues that the

¶28 Double jeopardy principles require that "punishment already exacted must be fully 'credited'" against a defendant's sentence. *North Carolina v. Pearce*, 395 U.S. 711, 718-19, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). Harris has not shown that his presentencing time on EHM was so punitive as to trigger double jeopardy's prohibition against multiple punishments for the same offense. Federal and state constitutional prohibitions against multiple punishments do not require misdemeanor sentencing courts to grant credit against a defendant's jail sentence for presentencing time served on EHM.

## CONCLUSION

¶29 We hold there are rational bases for treating felons and misdemeanants differently for sentencing credit purposes. Requiring courts to grant misdemeanants credit for time on EHM would hinder the ability of sentencing judges to order jail time for misdemeanor offenses and would limit misdemeanor sentencing courts' discretion to impose sentences for rehabilitative purposes. Finally, constitutional protections against multiple punishments do not entitle Harris to credit for his presentencing time on EHM because he has not shown that his conditions of presentencing release were so punitive as to trigger double jeopardy principles. We affirm the decision of the Court of Appeals reversing the superior court's order.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.

---

legislature, by removing the statement, intended EHM to be considered confinement under the DUI sentencing rules. However, the history of the 1999 amendment demonstrates that the legislature allowed courts to consider EHM as confinement to address the concerns of some local jurisdictions that exempting EHM from the definition of "confinement" made administration of the sentencing scheme difficult. H.B. REP. on Substitute H.B. 1124, 56th Leg., Reg. Sess. (Wash. 1999). The statute addresses only postconviction EHM, imposed as part of a defendant's punitive sentence; it does not address presentencing EHM as a condition of release pursuant to CrR 3.2.