# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON | No. 49848-1-II |
| Respondent | |
| v. | |
| VALENTIN DELGADO | UNPUBLISHED OPINION |
| Appellant | |

LEE, J. — Valentin Delgado appeals his sentence, which included the imposition of a condition prohibiting contact with all victims for 10 years and a $200 criminal filing fee. Specifically, Delgado argues that (1) the sentencing court exceeded its statutory authority by imposing a 10-year no-contact term for all victims, including the victims of fourth degree assault, a gross misdemeanor; (2) the imposition of the criminal filing fee without possibility of waiver violated equal protection; and (3) the sentencing court erred by failing to inquire into his ability to pay before imposing the criminal filing fee. We hold that Delgado's claims fail and affirm.

## FACTS

In July 2016, the State charged Delgado by third amended information with three counts of indecent liberties without forcible compulsion, one count of bail jumping, and 10 counts of fourth degree assault with sexual motivation. The charges arose from inappropriate touching of clients during massages. The State alleged that Delgado, a licensed massage therapist, had

unlawful sexual contact with and assaulted his clients. Pursuant to a plea agreement, Delgado agreed to plead guilty to all charges. The State agreed to recommend at sentencing, among other terms, 89 months of total confinement, 36 months of community custody, two years of "probation/supervision" on the gross misdemeanors, imposition of $200 in court costs, and 10 years of no contact with all the victims.

After he pled guilty, but before he was sentenced, Delgado moved to withdraw his guilty plea. The court denied his motion. The court then sentenced Delgado. For the felony convictions, the court imposed 89 months of confinement for the three indecent liberties convictions and 12 months of confinement for the bail jumping conviction, to be served concurrently, along with 31 months of community custody. For the gross misdemeanor convictions, the court imposed 364 days of confinement each for the 10 fourth degree assault with sexual motivation convictions, which the court suspended for 24 months upon compliance with certain conditions. The court also imposed a $200 criminal filing fee pursuant to RCW 10.46.190 and, over Delgado's objection, issued no-contact orders prohibiting him from contacting all of the victims in the case for 10 years.

Delgado appeals his sentence.

ANALYSIS

A.    NO-CONTACT CONDITION

Delgado argues that the sentencing court exceeded its statutory authority when it prohibited him from contacting the victims of fourth degree assault with sexual motivation for 10 years because that crime is a gross misdemeanor. We disagree.

1.      Standard of Review

"[W]e review whether the sentencing court had the statutory authority to impose a sentencing condition de novo." *State v. McWilliams*, 177 Wn. App. 139, 150, 311 P.3d 584 (2013), *review denied*, 179 Wn.2d 1020 (2014).  We also review de novo whether a sentencing court exceeded its statutory authority.  *State v. Button*, 184 Wn. App. 442, 446, 339 P.3d 182 (2014).

2.      Imposition of the 10-year No-Contact Condition

A sentencing court's authority is limited to that granted by statute.  *Id*.  Under RCW 9.94A.505(9), "As a part of any sentence, the court may impose and enforce crime-related prohibitions and affirmative conditions as provided in this chapter."  This statute "constitutes an independent grant of authority to impose crime-related prohibitions."  *State v. Armendariz*, 160 Wn.2d 106, 112, 156 P.3d 201 (2007).

Crime-related prohibitions are orders that directly relate to the circumstances of the crime.[1] RCW 9.94A.030(10).  Such prohibitions include no-contact orders.  *Armendariz*, 160 Wn.2d at 119.  No-contact orders are not limited to victims of the crime.  *State v. Navarro*, 188 Wn. App. 550, 556, 354 P.3d 22 (2015), *review denied*, 184 Wn.2d 1031 (2016).  The sentencing court "may impose crime-related prohibitions for a term of the maximum sentence to a crime, independent of conditions of community custody."  *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008), *cert. denied*, 556 U.S. 1192 (2009).

Here, the no-contact condition was imposed as a part of Delgado's sentence for indecent liberties, which arose from his inappropriate touching of clients during massages.  The victims of

---

[1] Delgado does not challenge the no-contact condition as a crime-related prohibition.

the fourth degree assaults were also Delgado's clients and subject to his inappropriate touching during massages. As a result, the no-contact condition covering the victims of the fourth degree assaults directly related to the circumstances leading to the indecent liberties convictions. RCW 9.94A.030(10). Thus, the sentencing court had the authority to prohibit Delgado from contacting all of the victims.

As for the term of the no-contact condition, the sentencing court prohibited Delgado from contacting the victims for 10 years as a part of his sentence for the indecent liberties convictions. The maximum sentence for Delgado's indecent liberties convictions, which are class B felonies, was 10 years. RCW 9A.44.100(2)(a); RCW 9A.20.021(1)(b). Because the maximum sentence for Delgado's crimes was 10 years, the sentencing court had the authority to impose the no-contact condition for 10 years. *Warren*, 165 Wn.2d at 32.

Delgado argues that the sentencing court had no authority to impose the 10-year no-contact condition for the fourth degree assault convictions because the condition exceeded the statutory maximum and length of his suspended gross misdemeanor sentence. For support, Delgado cites to RCW 9.92.060(1), RCW 9.92.064, and RCW 9.95.210(1)(a). Delgado contends that these statutes provide the sentencing court with the authority to suspend a sentence, requires the sentencing court to set a date for termination of the suspended sentence, and limits the maximum term of a suspended sentence to two years, respectively.

However, the statutes Delgado relies on do not apply. The sentencing court did not impose the 10-year no-contact condition as a part of Delgado's sentence for the gross misdemeanor fourth degree assault with sexual motivation convictions. The sentencing court imposed the no-contact with all victims of Delgado's crimes condition as a part of his sentence for the felony indecent

liberties convictions. The indecent liberties sentence was not suspended. As a result, Delgado's claim fails.

The sentencing court had the authority to prohibit Delgado from contacting all of the victims for 10 years as a condition of his felony sentence. Therefore, we hold that the sentencing court did not exceed its statutory authority when it imposed the 10-year no-contact condition.

B.      CRIMINAL FILING FEE

Delgado argues that (1) the imposition of the $200 criminal filing fee without possibility of waiver violated equal protection, and (2) the sentencing court erred by imposing the criminal filing fee without inquiring into his ability to pay. Both arguments fail.

1.      Equal Protection

Delgado argues that the imposition of the $200 criminal filing fee without the possibility of waiver violated equal protection because civil litigants may have filing fees waived. We disagree.

a.      Standard of review

Under article I, section 12 of the Washington State Constitution and the Fourteenth Amendment to the United States Constitution, equal protection requires that similarly situated individuals receive similar treatment under the law. *Harris v. Charles*, 171 Wn.2d 455, 462, 256 P.3d 328 (2011). Strict scrutiny applies if the classification is based on a suspect class or affects a fundamental right. *Id.* Intermediate scrutiny applies if the classification is based on a semi-suspect class or affects a liberty right. *Id.* Absent either of these classes or rights, rational basis review applies. *Id.* at 462-63.

A rational basis review is a deferential standard, and there is a strong presumption of constitutionality. *Id.* at 463; *State v. Mathers*, 193 Wn. App. 913, 925, 376 P.3d 1163, *review denied*, 186 Wn.2d 1015 (2016). Under a rational basis review, the party challenging the application of a law must show that the law is irrelevant to maintaining a state objective or that its classification is arbitrary. *Harris*, 171 Wn.2d at 463. In other words, that the classification for purposes of the law is not rationally related to a legitimate government interest. *Id.*

Here, it is undisputed that the classification of criminal and civil litigants for filing fee purposes does not involve a suspect class nor does it affect a fundamental right, and that a rational basis review applies. Therefore, the relevant inquiry is whether the difference in treatment of criminal defendants and civil litigants is rationally related to a legitimate government interest.

b. Difference rationally related to a legitimate government interest

RCW 36.18.020(2) states that clerks of the superior courts shall collect filing fees for various types of cases. That statute includes in the list of filing fees to be collected a $200 fee from adult criminal defendants upon conviction or plea of guilty and a $200 filing fee from a party initiating a civil action. RCW 36.18.020(2)(a), (h). Under General Rule (GR) 34, civil litigants, based on indigency, "may seek a waiver of filing fees or surcharges the payment of which is a condition precedent to a litigant's ability to secure access to judicial relief from a judicial officer in the applicable trial court." This rule was adopted to "ensure that indigent litigants have equal access to justice." *Jafar v. Webb*, 177 Wn.2d 520, 523, 303 P.3d 1042 (2013). "'[A civil] litigant should not be denied his day in court simply because he is financially unable to pay the court fees.'" *Id.* at 531 (quoting *O'Connor v. Matzdorff*, 76 Wn.2d 589, 603, 458 P.2d 154 (1969)). The $200 criminal filing fee is mandatory. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).

For civil litigants, filing fees must be paid at the initiation of a civil filing. RCW 36.18.020(2)(a). GR 34 allows the waiver of filing fees for indigent civil litigants to provide equal access to justice. *Jafar*, 177 Wn.2d at 523. Without such a waiver, indigent civil litigants would not be able to seek relief in the courts. *Id.* at 531.

In contrast, the criminal filing fee is only imposed after a criminal defendant has already had his or her day in court and has been convicted or pleaded guilty. RCW 36.18.020(2)(h). Thus, unlike civil litigants who are denied access to the court if they are unable to pay the filing fee, criminal defendants are not denied access to the court.

Here, treating civil litigants and criminal defendants differently with regard to the filing fee is rationally related to a legitimate government interest—to allow civil litigants equal access to the court. Therefore, we hold that Delgado's equal protection claim fails.

2.      Sufficient Inquiry Challenge Fails

Delgado argues that the sentencing court erred by imposing the $200 criminal filing fee without inquiring into his ability to pay because the fee is discretionary. We disagree.

a.      Legal principles

Whether RCW 36.18.020(2)(h) creates a mandatory or discretionary legal financial obligation (LFO) is an issue of statutory interpretation. *State v. Gonzales*, 198 Wn. App. 151, 153, 392 P.3d 1158, *review denied*, 188 Wn.2d 1022 (2017). We review questions of statutory interpretation de novo. *Id*.

Our purpose in interpreting a statute is to determine the legislature's intent. *Armendariz*, 160 Wn.2d at 110. To do so, we first look to the statute's plain language. *Id*. If the statute's plain

7

language is unambiguous, then our inquiry ends, and the statute is to be enforced according to its plain meaning. *Id.*

Under RCW 36.18.020(2)(h), clerks of the superior courts "shall collect" certain fees for its services, including, "Upon conviction or plea of guilty . . . an adult defendant in a criminal case shall be liable for a fee of two hundred dollars." We have held that criminal filing fees are mandatory, not discretionary. *Lundy*, 176 Wn. App. at 102. Although a sentencing court must make an individualized inquiry into the defendant's ability to pay before imposing discretionary LFOs, "the legislature has divested courts of the discretion to consider a defendant's ability to pay when imposing [mandatory LFOs]." *Lundy*, 176 Wn. App. at 102-103.

   b.     Criminal filing fee mandatory under plain language analysis

RCW 36.18.020(2)(h) states that clerks of the superior courts "shall collect" certain fees for its services, including, "Upon conviction or plea of guilty . . . an adult defendant in a criminal case shall be liable for a fee of two hundred dollars." The plain language of the statute—in particular, that the clerk "shall collect"—makes it clear that upon conviction or plea of guilty, the defendant must pay the $200 criminal filing fee. RCW 36.18.020(2)(h). The language of the statute renders the criminal filing fee mandatory. Since the plain language of the statute is clear, no further inquiry is required. *Armendariz*, 160 Wn.2d at 110. And because the $200 criminal filing fee is mandatory, the sentencing court was not obligated to consider Delgado's ability to pay when it imposed the fee. *Lundy*, 176 Wn. App. at 102.

   c.     Delgado's arguments

Delgado raises a number of arguments asserting that the $200 criminal filing fee is discretionary. However, these arguments are not persuasive.

First, Delgado acknowledges that this court in *Gonzales* and *Lundy*, and Division Three of this court in *Stoddard*,[2] have held that the criminal filing fee is mandatory. But he argues that the analyses in those cases were "not reasoned but overly simplistic" and did not attempt statutory analysis. Br. of Appellant at 11. However, Delgado's argument ignores the legal principle that if a statute's plain language is unambiguous, then our inquiry ends and the statute is to be enforced according to its plain meaning. *Armendariz*, 160 Wn.2d at 110.

The *Gonzalez* court conducted a plain language analysis and concluded the statutory language, "shall be liable," made the criminal filing fee mandatory. 198 Wn. App. at 155. And although not explicit, the *Lundy* court also appears to have used the same analysis to reach the same conclusion. 176 Wn. App. at 103. The *Stoddard* court relied on *Lundy's* holding. *Stoddard*, 192 Wn. App. at 225. Therefore, Delgado's argument fails.[3]

Second, Delgado argues that the legislature's use of the word "liable" does not denote a mandatory fee. Br. of Appellant at 12. He notes that "liable" is defined as a situation where legal liability might or might not arise, citing Black's Law Dictionary 915 (6th ed. 1990) and Webster's Third New International Dictionary 1304 (1993). Br. of Appellant at 12. And he also claims that

---

[2] *State v. Stoddard*, 192 Wn. App. 222, 225, 366 P.3d 474 (2016).

[3] Delgado also argues that *Gonzalez*, *Lundy*, and *Stoddard* are incorrect and harmful, and thus, we should disagree with the holdings in those cases. Delgado relies on the *Blazina* court's discussion on the problematic consequences of our state's LFO system to argue that holding criminal filing fees as mandatory is harmful. We may set aside precedent when it is both incorrect and harmful, but the party asking the court to do so must make this showing. *State v. Johnson*, 188 Wn.2d 742, 757, 399 P.3d 507 (2017). Delgado again relies on his argument that the *Gonzalez*, *Lundy*, and *Stoddard* courts' analyses were not reasoned statutory analyses but overly simplistic. However, as discussed above, the courts' holdings in *Gonzalez*, *Lundy*, and *Stoddard* were based on a plain language analysis. Delgado fails to show that the courts' decisions in those cases were incorrect. *Id*. Therefore, this argument fails.

the *Gonzalez* court's reliance on the phrase "shall be liable" ignores the meaning of the word "liable." Br. of Appellant at 12. But Delgado himself ignores the preceding language of the statute he relies upon—"Upon conviction or plea of guilty." RCW 36.18.020(2)(h). This language designates the situation in which the potential liability is realized. Once Delgado pleaded guilty, he became liable for the $200 criminal filing fee. Therefore, this argument fails.

Third, Delgado argues that the linguistic differences between RCW 36.18.020(2)(h) and other subsections of RCW 36.18.020(2) support his assertion that "shall be liable" does not denote a mandatory fee. Br. of Appellant at 13. He notes that RCW 36.18.020(2)(h) is the only subsection that contains "liable." Br. of Appellant at 15. And he cites to *Simpson Investment Co. v. Department of Revenue*, 141 Wn.2d 139, 160, 3 P.3d 741 (2000), for the proposition that when "different words are used in the same statute, it is presumed that a different meaning was intended to attach to each word." Br. of Appellant at 15. However, Delgado fails to recognize that RCW 36.18.020(2)(h) is also the only subsection that is dependent on the disposition of a case and imposes a fee on the non-filing party. *See* RCW 36.18.020(2)(h). The difference in situations supports the use of different words and does not render the criminal filing fee discretionary. Therefore, this argument also fails.

Fourth, Delgado argues that RCW 10.46.190 includes the same "shall be liable" language for jury fees, but jury fees are not mandatory. Br. of Appellant at 16. He notes that RCW 10.01.160(3) prohibits a court from ordering "a defendant to pay costs unless the defendant is or will be able to pay them." Br. of Appellant at 16. However, Delgado fails to recognize that RCW 10.01.160(2) specifically includes jury fees imposed under RCW 10.46.190. Criminal filing fees are imposed under RCW 36.18.020(2)(h) and are not included in the list of costs under RCW

10.01.160(2) that are subject to a discretionary determination of ability to pay under RCW 10.01.160(3). Therefore, Delgado's argument fails.

Fifth, Delgado argues that the language of RCW 36.18.020(2)(h) for criminal filing fees differs from other statutes imposing mandatory LFOs. He cites to RCW 7.68.035 (victim penalty assessment)[4] and RCW 43.43.7541 (DNA collection fee),[5] and contends that these statutes state, "there shall be imposed . . . a penalty assessment" and "must include a fee," respectively. Br. of Appellant at 17. He claims that RCW 36.18.020(2)(h) is different because it states that a defendant shall be liable. But Delgado fails to acknowledge that RCW 36.18.020(2)(h) states that clerks of superior courts "shall collect" the $200 fee from adult defendants upon conviction or plea of guilty. RCW 36.18.020(2)(h). This language is similar to that of RCW 7.68.035 and RCW 43.43.7541.[6] Therefore, this argument also fails.

---

[4] "When any person is found guilty in any superior court of having committed a crime . . . there shall be imposed by the court upon such convicted person a penalty assessment." RCW 7.68.035(1)(a).

[5] "Every sentence imposed for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars." RCW 43.43.7541.

[6] Delgado notes the State Supreme Court stated in a footnote in *State v. Duncan*, 185 Wn.2d 430, 436 n.3, 374 P.3d 83 (2016), that the legislature has designated RCW 7.68.035 and RCW 43.43.7541 as mandatory, while the Court of Appeals has treated RCW 36.18.020(2)(h) as mandatory. But the *Duncan* court did not overrule the treatment of criminal filing fees as mandatory nor did the court state that such treatment was improper.

The criminal filing fee is a mandatory LFO. Therefore, we hold that the sentencing court did not err when it imposed a $200 criminal filing fee without inquiring into Delgado's ability to pay.[7]

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

 

 

Lee, J.

We concur:

Worswick, P.J.

Sutton, J.

---

[7] Delgado argues that we should take judicial notice of the variance in treatment of the criminal filing fee amongst different counties in Washington. Appellate courts may take judicial notice of facts that are capable of immediate and accurate demonstration from easily accessible sources of indisputable accuracy and verifiable certainty. *Fusato v. Wash. Interscholastic Activities Ass'n*, 93 Wn. App. 762, 772, 970 P.2d 774 (1999). However, Delgado does not identify or include such sources in the record and his reference to "any of the hundreds of judgments and sentences from criminal cases available in the Court of Appeals" does not meet this requirement. Br. of Appellant at 19. Therefore, this argument fails.