143 P.3d 321 (2006)
John A. WAHLEITHNER, Appellant,
v.
Steve D. THOMPSON, Director, Snohomish County Jail, Respondent.
No. 57101-0-I.
Court of Appeals of Washington, Division 1.
September 18, 2006.
*322 Brice Everett Howard, Snohomish County Public Defender Assoc., Everett, WA, for Appellant.
Seth Aaron Fine, Charles Franklin Blackman, Snohomish County Prosecutor's Office, Everett, WA, for Respondent.
ELLINGTON, J.
¶ 1 John Wahleithner failed to comply with conditions of five suspended sentences, including three for drunken driving. Eventually the trial judge revoked the suspended sentences and imposed all remaining time to be served consecutively, for a total of 44 months. Wahleithner contends his total sentence constitutes cruel punishment in violation of the state constitution. We reject this argument and affirm.

FACTS
¶ 2 In 1999 and then again in early 2001, Wahleithner pleaded guilty in Snohomish County District Court to driving under the influence (DUI), a gross misdemeanor. Wahleithner served two days in jail on the first DUI and 65 days on the second. The balance of each one-year sentence was suspended on certain conditions, including a requirement that Wahleithner obtain a substance abuse assessment and complete any recommended treatment.
¶ 3 Within a few months, in March 2001, Wahleithner was cited for a third DUI, as well as possession of marijuana and hit and run. He entered into a deferred prosecution on all three charges, again upon condition that he complete substance abuse treatment. He did not, and in September 2003, his deferred prosecution was revoked and he was sentenced to a year in jail, suspended except for 120 days. Upon release, he was required to obtain a new substance abuse assessment and comply with treatment requirements. Again, Wahleithner did not complete treatment.
¶ 4 On August 31, 2004, the court conducted a hearing on various probation violations, including failing to complete alcohol treatment and failing to report to his probation officer. Among other specifics of Wahleithner's extensive history of noncompliance, he had attended a probation interview while intoxicated.
¶ 5 Finding that Wahleithner had made no attempt to comply with the treatment requirements for the three years of probation, the court revoked the suspended sentences on all cause numbers, imposed all remaining time, and ordered that the terms be served consecutively. The remaining time totaled approximately 44 months.
¶ 6 Wahleithner filed a habeas corpus petition in Snohomish County Superior Court, asserting that the district court judge who sentenced him routinely imposes longer sentences than any other district court judge in the county, and that his sentence constituted cruel punishment under the Washington Constitution. The superior court denied the petition.
*323 ¶ 7 Wahleithner sought reconsideration in the district court. When the district court declined to set a hearing, he renewed his petition in the superior court. The superior court again concluded Wahleithner's sentence did not constitute cruel punishment and denied his petition, from which he now appeals. We review rulings on writs of habeas corpus de novo. State v. Dallman, 112 Wash.App. 578, 583, 50 P.3d 274 (2002).

DISCUSSION
¶ 8 Both federal and state constitutions prohibit punishment that is grossly disproportionate to the gravity of the offense. State v. Fain, 94 Wash.2d 387, 395-97, 617 P.2d 720 (1980); State v. Morin, 100 Wash. App. 25, 29-30, 995 P.2d 113 (2000); Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Wahleithner's petition is based on the Washington Constitution, which is more protective in this regard than is the federal constitution. State v. Manussier, 129 Wash.2d 652, 674, 921 P.2d 473 (1996); State v. Thorne, 129 Wash.2d 736, 772-73, 921 P.2d 514 (1996); Fain, 94 Wash.2d at 392-93, 617 P.2d 720.
¶ 9 Article I, section 14 of the Washington Constitution provides that "[e]xcessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted." The question is whether the punishment is grossly disproportionate to the offense committed. See Thorne, 129 Wash.2d at 776, 921 P.2d 514. In this inquiry, we consider (1) the nature of the offense; (2) the legislative purpose behind the sentencing statute; (3) the punishment the defendant would have received in other jurisdictions for the same offense; and (4) the punishment meted out for other offenses in Washington. Fain, 94 Wash.2d at 397, 617 P.2d 720. No single factor is dispositive. State v. Gimarelli, 105 Wash.App. 370, 380-81, 20 P.3d 430 (2001).
¶ 10 Wahleithner does not contend that any single sentence imposed for his various offenses was unauthorized or disproportionate. Rather, he argues that his sentences become disproportionate in the aggregate  that imposing the sentences consecutively resulted in cruel punishment. He also argues his sentences are disproportionate because they are not typical of sentences imposed for similar crimes by other judges in the same district.
¶ 11 Wahleithner has erred in framing the issues. Except in extremely rare cases, proportionality review for constitutional purposes is a review of each individual sentence, not their cumulative effect. Nor does the constitutional analysis include a comparison of relative leniency among different judges in the same district.
¶ 12 Under Eighth Amendment analysis, each sentence is treated separately, not cumulatively, for purposes of determining whether it is cruel and unusual. See Pearson v. Ramos, 237 F.3d 881, 886 (7th Cir.Ill. 2001) ("it is wrong to treat stacked sanctions as a single sanction. To do so produces the ridiculous consequence of enabling a prisoner, simply by recidivating, to generate a colorable Eighth Amendment claim."); United States v. Aiello, 864 F.2d 257, 265 (2d Cir. N.Y.1988) (proportionality analysis focuses on sentence imposed for each specific crime, not on cumulative sentence); United States v. Schell, 692 F.2d 672, 675 (10th Cir.Kan. 1982) (observing that under this argument, virtually any sentence becomes cruel punishment if defendant is already serving lengthy sentences for prior convictions). See also Close v. People, 48 P.3d 528, 538-39 (Colo. 2002) (citing O'Neil v. Vermont, 144 U.S. 323, 331, 12 S.Ct. 693, 36 L.Ed. 450 (1892) (severity of defendant's punishment resulted from number of crimes he committed, which does not raise proportionality concerns)).
¶ 13 Only on the very rare occasion when a consecutive sentence is shockingly long has a court held cumulative sentences cruel and unusual. Such a case was State v. Davis, 206 Ariz. 377, 79 P.3d 64 (2003), cert. denied, 541 U.S. 1037, 124 S.Ct. 2097, 158 L.Ed.2d 723 (2004), wherein a sentence was found unsupported by any reasonable sentencing policy. Davis was 20 years old with no criminal record, convicted on four counts of engaging in consensual sex with two teenage girls. For these crimes, he was sentenced to 52 years in prison (four consecutive 13-year sentences). The Arizona Supreme Court held the sentence grossly disproportionate to *324 the offenses and shocking to the court and the community. Id. at 388, 79 P.3d 64.
¶ 14 In State v. Berger, 212 Ariz. 473, 134 P.3d 378, 385 (2006), however, the same court emphasized that aggregate cumulative sentences are not ordinarily the proper focus of constitutional proportionality analysis, and reiterated its description of Davis as an "extremely rare case." Despite characterizing the penalties imposed upon Berger as "severe and unforgiving," the court rejected a similar challenge to a sentence of 10 years for each of 20 counts of child pornography, imposed consecutively as required by statute. Id. at 387-88.
¶ 15 Thus in only a very rare case does the court examine consecutive sentences for disproportionality under the Eighth Amendment. Wahleithner contends we should do so here, but he provides no analytical framework for doing so, and makes no argument specific to the Washington Constitution. He contends simply that the sentence, in the aggregate, is "shocking to the sense of justice and unconstitutional." App. Br. at 13.
¶ 16 In advancing this argument, Wahleithner again errs in framing the issues. He contends his sentence was imposed "for not doing alcohol treatment." Id. This is not correct. Each sentence was imposed separately for separate crimes, and suspended in part, upon certain conditions. The suspensions were revoked because Wahleithener failed to meet the conditions of suspension. But that does not mean the sentences were "for" failing to complete treatment. The sentences were imposed for Wahleithner's crimes. Suspension was an act of legislative and judicial grace intended to encourage obviously needed treatment.
¶ 17 The proper inquiry under article I, section 14 is the proportionality of the individual sentences. Since Wahleithner does not challenge the individual sentences, we attempt, despite our doubts about the propriety of doing so, to apply the Fain factors to Wahleithner's aggregate sentence to determine whether this is one of those extremely rare cases in which such a review is appropriate.

Fain Analysis
¶ 18 The Nature of the Offenses. In weighing the proportionality between an offense and the punishment imposed, courts consider whether the crime caused or threatened injury to persons or property. Fain, 94 Wash.2d at 397-98, 617 P.2d 720.
¶ 19 Wahleithner's crimes included three DUIs and hit and run. These are offenses that threaten or cause injury to persons or property. His repeated failure to complete substance abuse treatment also relates to public safety, given that he seems determined to drive while intoxicated. Wahleithner is serving consecutive time only because he consistently failed to take steps that might lessen the threat he poses to persons and property. Given the potential for injury and the years of judicial effort to obtain his compliance, this factor does not favor Wahleithner.
¶ 20 Legislative Purpose Behind the Sentencing Statute. As applied here, this factor involves the statutes authorizing penalties for Wahleithner's offenses and the statutes authorizing suspended sentences and probation conditions. DUI and hit and run are gross misdemeanors with a maximum penalty of 365 days in jail. RCW 9.92.020. Possession of marijuana is a misdemeanor with a maximum penalty of 90 days in jail. RCW 9.92.030.
¶ 21 The statutes give judges broad authority to suspend jail time in misdemeanor cases, to impose conditions upon suspended sentences, and to revoke the suspension in whole or in part upon violation of a condition of probation. RCW 3.66.068, .069; RCW 46.61.5055. Sentences for these offenses may be imposed concurrently or consecutively. Courts have discretion to impose misdemeanor sentences consecutively. Mortell v. State, 118 Wash.App. 846, 851-52, 78 P.3d 197 (2003).
¶ 22 One purpose of suspending a sentence is to create an incentive for the offender's compliance with certain conditions, which serve to rehabilitate the offender, compensate the victim, or reduce foreseeable danger to the community. See, e.g., City of Spokane v. Marquette, 146 Wash.2d 124, *325 130-31, 43 P.3d 502 (2002); State v. Williams, 97 Wash.App. 257, 263, 983 P.2d 687 (1999). In many DUI and hit and run cases, a treatment requirement is directly related to public safety.
¶ 23 No legislative purpose is contravened by consecutive sentences under the circumstances here.
¶ 24 Punishment Received In Other Jurisdictions For Same Offense. In reviewing this factor, Washington courts compare the statute(s) underlying the sentence at issue with the analogous statute(s) in jurisdictions outside of the state.
¶ 25 Wahleithner's third DUI could have led to a felony conviction in Oregon, Idaho, Alaska, or Nevada. The sentences in Wahleithner's first two DUI cases are comparable to those in other states. Wahleithner does not offer a comparison with other jurisdictions as to consecutive versus concurrent imposition of suspended time after an extensive history of probation violations. Instead, Wahleithner advocates a comparison with our own felony sentencing scheme. This line of argument, however, attempts to merge the analysis of this factor with the one below.
¶ 26 Punishment For Other Offenses in Washington. In Fain, the court compared the offenses leading to the defendant's life sentence as a habitual criminal to the statutory maximums for other categories of felonies, and concluded that "Fain's offenses, if not indeed trivial when compared to his punishment, have earned him a penalty much in excess of that imposed for those crimes which society ordinarily regards as far more serious threats to life, health, and property." Fain, 94 Wash.2d at 401, 617 P.2d 720.
¶ 27 The same cannot be said for Wahleithner's penalties. First, his offenses were not trivial. Nor did his individual sentences exceed those imposed for more serious crimes. Additionally, repetition of criminal conduct justifies heavier penalties for each repeated crime. State v. Lee, 87 Wash.2d 932, 937, 558 P.2d 236 (1976). And again, Wahleithner does not address the proper analysis of consecutive versus concurrent sentences.
¶ 28 Wahleithner attempts to compare his sentences to those for felonies under the Sentencing Reform Act of 1981(SRA), chapter 9.94A RCW. Such a comparison is of very limited utility. The SRA represents a significant limitation on judicial discretion, and as a determinate system, permits none of the sentencing flexibility available for misdemeanors, such as suspending sentences or deferring prosecutions. RCW 9.94A.575. Rehabilitation is secondary to retribution, and courts have little leeway for the carrot-and-stick incentive offered by misdemeanor probation conditions. See State v. Rice, 98 Wash.2d 384, 393, 655 P.2d 1145 (1982); see also DAVID BOERNER, SENTENCING IN WASHINGTON § 2.5 (1985). Further, the SRA sets rules for imposition of concurrent and consecutive sentences. RCW 9.94A.589; see, e.g., State v. Grayson, 130 Wash.App. 782, 786, 125 P.3d 169 (2005). And Wahleithner offers no discussion of the likely consequences to him had his crimes been felonies.
¶ 29 Finally, Wahleithner has compiled charts and graphs comparing his sentences to those imposed for DUI offenses by other judges in the same county. He contends the judge who sentenced him is unrivaled in imposing harsh sentences. But as Judge Thomas Wynn stated below: "This factor is intended to provide a comparison of sentencing for the current offense to the sentencing scheme in Washington.... No court has merely analyzed sentencing trends and required a cookie cutter result by all sentencing judges." Clerk's Papers at 14.
¶ 30 We agree with Judge Wynne, and reject the argument that an otherwise legal sentence can violate the prohibition against cruel punishment just because it is harsher than the sentence another judge might impose. The question is not the relative leniency in sentencing patterns of individual judges. Rather, this factor compares the sentence authorized by the legislature for the particular crime to the sentences authorized for other offenses of similar gravity, or compares the gravity of the particular crime to the gravity of other offenses for which similar sentences are authorized. See Fain, 94 Wash.2d at 401, 617 P.2d 720; Morin, 100 Wash.App. at 33, 995 P.2d 113. This factor does not weigh in Wahleithner's favor.
*326 ¶ 31 Wahleithner's sentences were not grossly disproportionate to his offenses, and Wahleithner offers no persuasive reason that proportional sentences become disproportionate if required to be served consecutively. But even if such an argument were valid, Wahleithner's aggregate sentence is not grossly disproportionate and does not shock the conscience of the court. It therefore does not constitute cruel punishment.
¶ 32 We affirm denial of the petition.
WE CONCUR: COX, J., and SCHINDLER, A.C.J.