2014 JUN 23 AM 9:27



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71058-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SCOTT EUGENE COLLINS, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 23, 2014 |

SCHINDLER, J. — Scott Eugene Collins seeks reversal of multiple jury convictions arguing double jeopardy barred retrial following a mistrial. In the alternative, Collins asserts the eight convictions for possession of stolen property violate double jeopardy and imposition of a consecutive sentence under the "Hard Time for Armed Crime Act" (HTACA), LAWS OF 1995, chapter 129, section 21 (Initiative Measure No. 159), for the three counts of possession of a stolen firearm and the three counts of unlawful possession of a firearm violates the prohibition against cruel punishment. We hold the retrial did not violate double jeopardy and the court did not err by imposing the consecutive sentences under the HTACA. We accept the State's concession that the eight convictions for possession of stolen property violate double jeopardy and all but one of the convictions must be vacated. Accordingly, we affirm in part, reverse in part, and remand for resentencing.

FACTS

Steven Brent worked as a corrections officer at the Cowlitz County Jail. On December 5, 2009, Brent got off work at 4:00 p.m. When he arrived home, Brent "knew something was wrong" because "my dog came in from around the outside of my garage and my dog is an inside dog," and there was a "two-inch skid mark the full length of the driveway." Brent said the front door was "kicked in, the doorframe was busted," and "[c]lothes, anything that was on the dressers were just thrown and a random pattern[.] Every room in the house was ransacked." A number of his belongings were stolen, including his 12-guage shotgun and a .22 caliber pistol revolver, a mountain bike, televisions, "computers, wood splitter, chainsaws, boat, trailer, boat loaders, [and] fishing gear." Brent estimated the value of the stolen property was between $12,000 and $15,000. Brent called 911 to report the burglary.

Cowlitz County Sherriff Deputy Danny O'Neill responded to the 911 call. Deputy O'Neill suggested Brent find out whether his next-door neighbor noticed "unusual vehicles . . . in the driveway" and check Craigslist. Deputy O'Neill told Brent that he "suspected his property went to 1306 Ross Street in Kelso."

The next day, Brent and a friend "went to the pawnshops first then we started driving around town" looking for the stolen property before going to 1306 Ross Street. When they went to the house located at 1306 Ross Street, Brent saw his stolen mountain bike and his fishing net in the alleyway. Brent called the police. The police verified that Scott Eugene Collins lived at 1306 Ross Street and obtained a warrant to search the house. When the police executed the search warrant, they found property

2

that had been stolen from Brent and a number of other victims, including a semi-automatic pistol and a Dodge Durango. The police also found marijuana.

The State charged Collins with burglary in the first degree while armed with a firearm, residential burglary, three counts of unlawful possession of a firearm in the first degree, three counts of possession of a stolen firearm, eight counts of possession of stolen property, possession of a stolen vehicle, identity theft in the second degree, and possession of 40 grams or less of marijuana.

Collins filed a motion to dismiss the burglary charges under State v. Knapstad, 107 Wn.2d 346, 729 P.2d 48 (1986), and filed a motion to sever the three counts of unlawful possession of a firearm. The court granted the motion to sever. The court reserved ruling on the motion to dismiss the burglary charges.

At the beginning of trial, the defense moved to exclude any reference to "the felony possession of a firearm charges." The prosecutor agreed to instruct the witnesses "not to mention the fact that Mr. Collins is a convicted felon or that he was investigated for the unlawful possession of firearms in the first degree."

Following jury selection, the court granted the defense motion to dismiss the burglary charges. The defense attorney asked the State to "please advise your witnesses carefully how to handle the -- you know, the issues regarding the burglary discussions or anything." The prosecutor argued the witnesses should be allowed to testify about the burglaries:

> The fact that they were burglarized is self-evident from the fact that . . . they lost their stuff, so if they can't say, we were burgled, how did their stuff get taken? . . . [T]hey need to testify to the fact that it's stolen.

3

The court agreed, "I don't see -- that doesn't prejudice your Client because he's not charged with burglary."

The court instructed the jury not to consider the burglary charges:

When we first started this trial a couple of days ago, I read to you a number of charges that you were going to be considering in this case, and that list is now changed. You -- you were originally -- you will not be presented information related to the five counts of alleged burglary, and nor will you be asked to consider those charges in your deliberations.

The State called Brent as the first witness to testify at trial. The State then called Deputy O'Neill. During direct examination, the prosecutor asked Deputy O'Neill whether he talked "to Mr. Brent about what he might do to be proactive about the burglary" and, if so, what he told Brent. In response, Deputy O'Neill testified, "I told [Brent] I had a suspect that I felt was probably involved in several of the north-end burglaries that was living --." The defense objected.

Outside the presence of the jury, the defense attorney moved for a mistrial. The attorney argued Deputy O'Neill violated the motion in limine order by suggesting Collins was a prior suspect in "a rash of other burglaries" and the testimony was "extremely prejudicial."

The prosecutor argued there was "no bad faith in asking . . . that question" and pointed to the "very specific testimony in . . . Deputy O'Neill's report that relates to that question." The prosecutor argued, in pertinent part:

[T]he question was framed in such a way, what did you tell him to do? I was not attempting to elicit anything about that, . . . Deputy O'Neill had directed Mr. Brent to look on Craigslist for his property and then to go sit outside 1306 Kelso. And so that explains why the victim, Mr. Brent, and [his friend] went and sat outside 1306, North Kelso. They saw the -- they saw the bicycle there. That -- that's the context for that.

4

The court granted the motion for a mistrial. The court ruled, in pertinent part:

I'm concerned about the statement and . . . what I can do about that with the jury. I mean, I think that's an unfortunate circumstance, but I don't know that, given that the issue's raised and a mistrial's been requested, I think that probably, much to my dissatisfaction, I don't really have any opportunity -- any ability to not do that. We had specific motion in limine on that, which was granted. I'm not going to make any other rulings with regards to dismissal. If that is something that Counsel wishes to bring in a formal motion, which probably needs to be set for some sort of -- a little more extended than I can do at this time. I'm not going to dismiss the case. So the case will -- will remain pending and will need to be reassigned.

Following the decision to grant a mistrial, Collins filed a "Motion to Dismiss Due to Prosecutorial Mismanagement/Misconduct" under CrR 8.3(b). Collins argued that because the prosecutor "admittedly failed to properly instruct its witnesses as instructed by the court, . . . such conduct is recklessly indifferent to both the court ruling and the defendant's rights, and impermissibly provoked a mistrial and requires dismissal of this case with prejudice."

Defense counsel filed a declaration in support of the motion to dismiss. The defense attorney states that "Deputy O'Neill's response was verbatim from his report" and the defense was "forced to called [sic] for a mistrial." The attorney states that "[a]fterwards, [the] Prosecutor . . . apologized, and said he should have given better instruction to the deputy." The attorney also states that "more information is needed to assist the court to determine whether the prosecution actually instructed their witnesses regarding the defense's motion in limine as ordered by the court."[1]

The State filed a response. In his declaration, the prosecutor states that he neither intentionally nor recklessly attempted to cause the mistrial, nor did he intend to elicit information that would be in violation of the motions in limine. The prosecutor

---

[1] Emphasis in original.

states that he told Deputy O'Neill about the rulings in limine and instructed Deputy O'Neill "not to discuss the burglaries that had been charged in this case and that they had been dismissed." The prosecutor refers to Brent's testimony that he went "to pawn shops with his friend looking for his stolen property and that he had ultimately ended up outside 1306 Ross where he saw his bicycle and fishing net." The prosecutor also states that he did not prepare a "script of questions" for the direct examination of Deputy O'Neill but, "instead[,] I used a copy of his police report from the incident." The prosecutor explained that "[t]he question I asked was directly based on the following paragraph from the police report (2nd paragraph of attached report)" and provided a copy of the police report. Deputy O'Neill's police report states, in pertinent part:

> I explained to the victim in this case things he could do to help me with the case. I asked if he would check Craigs list [sic] for his boat, I asked him to check with his next door neighbor for unusual vehicles seen in the driveway. I told him I suspected his property went to 1306 Ross Street in Kelso. I told him he could drive by if in the area and report anything he thought was his.

The court rejected the argument of mismanagement or intentional misconduct by the prosecutor and denied the motion to dismiss under CrR 8.3(b).

The trial on the three counts of unlawful possession of a firearm in the first degree began on February 6, 2012. Collins stipulated to a bench trial. Collins also stipulated that he had previously been convicted of second degree burglary. The court found Collins guilty of three counts of unlawful possession of a firearm in the first degree.

The retrial on the other counts began on February 21. The jury convicted Collins of possession of a stolen Dodge Durango; two counts of possession of stolen property in the second degree belonging to Brent and Brian MacArthur; six counts of possession

of stolen property in the third degree belonging to Sabrina Little, Douglas Johnson, Kenneth McDermott, Christopher Farmer, Gary Grasser, and Tiffany Ostreim; three counts of possession of a stolen firearm; and possession of 40 grams or less of marijuana.

In the sentencing memorandum, the State argued RCW 9.41.040(6) and RCW 9.94A.589(1)(c) of the Hard Time for Armed Crime Act (HTACA) required imposition of a consecutive sentence for the three counts of possession of a stolen firearm and the three counts of unlawful possession of a firearm to run concurrently with the standard-range sentence on the other convictions.

In the defense sentencing memorandum, the defense asserted the HTACA permitted an exceptional sentence downward where the presumptive sentence would be " 'clearly excessive' " under RCW 9.94A.535(1)(g) and "grossly disproportionate to the gravity of the offense." The defense argued the court should impose a low-end standard-range sentence between 72 and 87 months.

At sentencing, the court rejected the request for an exceptional sentence downward. The court ruled that the HTACA required imposition of a consecutive sentence for each of the six convictions for possession of a stolen firearm and unlawful possession of a firearm. With an offender score of 23, the standard-range for possession of a stolen firearm was 72 to 96 months and was 87 to 116 months for unlawful possession of a firearm. The court imposed a consecutive 72-month sentence for each of the three counts of possession of a stolen firearm and a consecutive 88-month sentence for each of the three counts of unlawful possession of a firearm, totaling 480 months. The court imposed a concurrent standard-range sentence for

7

possession of stolen property, possession of a stolen motor vehicle, and possession of marijuana. Collins appeals.

ANALYSIS

Retrial

Collins contends that conducting a retrial following the decision to grant a mistrial violated his constitutional right against double jeopardy. The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington State Constitution prevent the State from putting a person in jeopardy twice for the same crime. The Fifth Amendment states, in pertinent part, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Washington Constitution also guarantees that "[n]o person shall . . . be twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9. Whether the retrial violates double jeopardy is a question of law we review de novo. State v. Jackman, 156 Wn.2d 736, 746, 132 P.3d 136 (2006).

As a general rule, double jeopardy does not bar retrial after a defendant moves for a mistrial. Oregon v. Kennedy, 456 U.S. 667, 672-73, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982). However, there is a narrow exception to the general rule. Where "the governmental misconduct in question is intended to 'goad' the defendant into moving for a mistrial," a defendant may "raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." Kennedy, 456 U.S. at 676.

In Kennedy, the prosecutor asked an expert witness whether the reason he had never done business with the defendant was " 'because he is a crook.' " Kennedy, 456 U.S. at 669. The United States Supreme Court held that the double jeopardy clause of

8

the Fifth Amendment did not bar retrial because the prosecutor did not intentionally cause a mistrial. Kennedy, 456 U.S. at 679.

On remand, the Oregon Supreme Court adopted a different test under the Oregon Constitution:

> [A] retrial is barred by . . . the Oregon Constitution when improper official conduct is so prejudicial to the defendant that it cannot be cured by means short of a mistrial, and if the official knows that the conduct is improper and prejudicial and either intends or is indifferent to the resulting mistrial or reversal. When this occurs, it is clear that the burden of a second trial is not attributable to the defendant's preference for a new trial over completing the trial infected by an error. Rather, it results from the state's readiness, though perhaps not calculated intent, to force the defendant to such a choice.

State v. Kennedy, 295 Or. 260, 276, 666 P.2d 1316 (1983). However, because the trial court found that the prosecutor did not act in "bad faith," the Oregon Supreme Court concluded that the "criteria for imposing a constitutional bar against a second trial were not met." Kennedy, 295 Or. at 277-78. The court also stated that even intentional prosecutorial misconduct does not bar a mistrial if it "does not reflect a willingness to risk placing the defendant repeatedly in jeopardy for the same offense." Kennedy, 295 Or. at 277. Further, the court stressed that the difference between the standards for double jeopardy under the federal and Oregon constitutions "actually is quite narrow." Kennedy, 295 Or. at 272.

> The sole issue is whether . . . there is room for a double jeopardy bar beyond the case of an intentionally provoked mistrial when a prosecutor "harasses" the defendant with what the prosecutor knows to be prejudicial error. [A] guarantee against "harassment" implies a requirement of some conscious choice of prejudicial action before the guarantee bars correction of the error by a new trial. Negligent error, "gross" or otherwise, is not enough.

Kennedy, 295 Or. at 272-73.

9

Collins urges us to adopt Oregon's interpretation of its textually similar double jeopardy clause. Collins does not claim prosecutorial misconduct barred the retrial. Instead, Collins argues the "intentional misconduct on the part of Deputy O'Neill" barred the retrial and violated double jeopardy. State v. Hopson, 113 Wn.2d 273, 778 P.2d 1014 (1989), controls. In Hopson, the court squarely considered and rejected the same argument.

In Hopson, a state fire investigator referred to the defendant's " 'booking photograph' " after he was told not to mention criminal history. Hopson, 113 Wn.2d at 275-76. After the second reference to the booking photograph, the court granted the defense motion for a mistrial. Hopson, 113 Wn.2d at 276.

On appeal, the defendant urged the court to adopt the Oregon standard and hold that the retrial violated double jeopardy because the witness either intended to cause or was indifferent to the resulting mistrial and knew his conduct was prejudicial. Hopson, 113 Wn.2d at 277-78, 280. The Washington Supreme Court rejected the attempt to "extend the Oregon application" to the conduct of the state fire investigator witness, noting that the Oregon court had never applied its test to the conduct of a witness. Hopson, 113 Wn.2d at 282. The court emphasized the "narrow difference" between the two tests, noting that both "require a 'rare and compelling' set of facts." Hopson, 113 Wn.2d at 283. The court also concluded that where the witness's testimony was inadvertent or even grossly negligent, the testimony "would not meet the Oregon standard to bar retrial even if the bar applied to witnesses." Hopson, 113 Wn.2d at 282-

10

83.[2] Here, as in Hopson, even if Deputy O'Neill's testimony was even grossly negligent, neither federal law nor the Oregon standard barred retrial.

Unit of Prosecution

In the alternative, Collins contends the eight convictions for possession of stolen property violate double jeopardy. Double jeopardy protects a defendant from being convicted more than once under the same statute if the defendant commits only one crime. State v. Westling, 145 Wn.2d 607, 610, 40 P.3d 669 (2002). If a defendant is convicted of multiple violations of the same statute, the court must determine what unit of prosecution the legislature intends as the punishable act under the statute. State v. Tvedt, 153 Wn.2d 705, 710, 107 P.3d 728 (2005).

A person commits the crime of possession of stolen property in the second degree if he "possesses stolen property, other than a firearm . . . or a motor vehicle, which exceeds seven hundred fifty dollars in value but does not exceed five thousand dollars in value." RCW 9A.56.160(1)(a). Possession of stolen property in the second degree is a class C felony. RCW 9A.56.160(2). Possession of stolen property in the third degree is a gross misdemeanor. RCW 9A.56.170(2).

The State concedes that under State v. McReynolds, 117 Wn. App. 309, 71 P.3d 663 (2003), seven of the eight convictions for possession of stolen property must be dismissed. We accept the State's concession as well taken. In McReynolds, we held

---

[2] The court cites to other jurisdictions that "refused to apply the bar in similar circumstances." Hopson, 113 Wn.2d at 283. See, e.g., State v. Maddox, 185 Ga. Ct. App. 674, 365 S.E.2d 516 (1988) (police officer's testimony in drunk driving trial was not attributable to prosecutorial misconduct where prosecutor did not actively aid or encourage the officer but rather had specifically instructed him not to refer to defendant's prior convictions); State v. Fuller, 374 N.W.2d 722 (Minn. 1985) (the Minnesota Supreme Court reversed a court of appeals decision where the lower court had barred retrial based on a prosecutorial duty to properly instruct witnesses); see also State v. Butler, 528 So.2d 1344 (Fla. Dist. Ct. App. 1988) (prosecutor's failure to warn a state detective serving as a witness not to mention a stolen car did not bar retrial).

that because the simultaneous possession of property stolen from multiple owners constituted one unit of prosecution of the crime, the multiple convictions for possession of stolen property violated double jeopardy. McReynolds, 117 Wn. App. at 339-40.

HTACA

Collins asserts that imposition of a consecutive sentence under the HTACA for the three convictions of possession of a stolen firearm and the three convictions of unlawful possession of a firearm violates his constitutional right against cruel punishment. We review a constitutional challenge to the court's sentencing decision de novo. State v. Cubias, 155 Wn.2d 549, 552, 120 P.3d 929 (2005).

Under RCW 9.41.040(6) of the HTACA, the court must impose a consecutive sentence for unlawful possession of a firearm in the first or second degree and for felony possession of a stolen firearm. RCW 9.41.040(6) states, in pertinent part:

> Notwithstanding any other law, if the offender is convicted under this section for unlawful possession of a firearm in the first or second degree and for the felony crimes of theft of a firearm or possession of a stolen firearm, or both, then the offender shall serve consecutive sentences for each of the felony crimes of conviction listed in this subsection.

Article I, section 14 of the Washington Constitution provides that "[e]xcessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted." The State constitutional proscription against "cruel punishment" affords greater protection than its federal counterpart. WASH. CONST. art. I, § 14; State v. Fain, 94 Wn.2d 387, 392-93, 617 P.2d 720 (1980).

To determine whether a sentence is grossly disproportionate to the crime for which it is imposed and thus violates the prohibition against cruel and unusual punishment, it is necessary to consider (1) the nature of the offense, (2) the legislative

purpose behind the sentencing statute, (3) the punishment the defendant would have received for the same crime in other jurisdictions, and (4) the sentence the defendant would receive for other similar crimes in Washington. Fain, 94 Wn.2d at 397; State v. Rivers, 129 Wn.2d 697, 712-13, 921 P.2d 495 (1996). No single factor is dispositive. State v. Gimarelli, 105 Wn. App. 370, 380-81, 20 P.3d 430 (2001). "Only on the very rare occasion when a consecutive sentence is shockingly long has a court held cumulative sentences cruel and unusual." Wahleithner v. Thompson, 134 Wn. App. 931, 937, 143 P.3d 321 (2006).

The HTACA "carves out an area of criminal offenses, armed crime, and limits its scope to increasing penalties for armed crime." State v. Broadaway, 133 Wn.2d 118, 127-28, 942 P.2d 363 (1997).[3] The HTACA targets crimes involving firearms as warranting increased levels of punishment. The statutory provisions enacted as part of the HTACA " '[d]istinguish between the gun predators and criminals carrying other deadly weapons and provide greatly increased penalties for gun predators.' " In re Pers. Restraint of Cruze, 169 Wn.2d 422, 431, 237 P.3d 274 (2010)[4] (quoting LAWS OF 1995, ch. 129, § 1(2)(c)). "It is the province of the Legislature, if it so chooses, not the appellate courts, to ameliorate any undue harshness arising from consecutive sentences for multiple firearm counts." State v. Murphy, 98 Wn. App. 42, 49 n.8, 988 P.2d 1018 (1999).[5]

---

[3] Emphasis in original.

[4] Alteration in original, emphasis in original.

[5] In Murphy, we held the plain language of RCW 9.41.040(6) required the court impose a consecutive sentence for each of the 10 firearm theft and unlawful possession of a firearm convictions. Murphy, 98 Wn. App. at 48-49. See also McReynolds, 117 Wn. App. at 342-43 (holding the statute required court to run each of defendant's multiple counts of possession of a stolen firearm and unlawful possession of a firearm convictions consecutively).

RCW 9.94A.589(1)(c) also underscores the legislature's intent to require consecutive sentences for certain firearm offenses. RCW 9.94A.589(1)(c) states, in pertinent part:

> If an offender is convicted under RCW 9.41.040 for unlawful possession of a firearm in the first or second degree and for the felony crimes of theft of a firearm or possession of a stolen firearm, or both, the standard sentence range for each of these current offenses shall be determined by using all other current and prior convictions, except other current convictions for the felony crimes listed in this subsection (1)(c), as if they were prior convictions. The offender shall serve consecutive sentences for each conviction of the felony crimes listed in this subsection (1)(c), and for each firearm unlawfully possessed.

Because Collins concedes that several other jurisdictions have similar statutory schemes, he fails to show that he would have been punished more leniently outside of Washington. Federal law also imposes enhanced penalties for armed crime, and federal courts have upheld consecutive sentences for firearm crimes. See, e.g., United States v. Segler, 37 F.3d 1131, 1134-35 (5th Cir. 1994) (upholding consecutive 60-month sentence for unlawful possession of a firearm); Hudgins v. Wainwright, 530 F. Supp. 944, 948-49 (S.D. Fla. 1981) (upholding consecutive 15-year sentence for unlawful possession of a firearm), aff'd, 715 F.2d 578 (11th Cir. 1983), cert. denied, 466 U.S. 944, 104 S. Ct. 1928, 80 L. Ed. 2d 473 (1984). In Washington, possession of a stolen firearm and unlawful possession of a firearm in the first degree are class B felonies that carry a maximum sentence of 10 years. RCW 9A.56.310(6); RCW 9.41.040(1)(b); RCW 9A.20.021(1)(b). With an offender score of 23, the court imposed a low-end standard-range sentence for each of Collins' six firearm convictions.

We conclude that under the Fain factors, the imposition of consecutive sentences for the six firearm convictions does not constitute cruel punishment.

14

We affirm in part, reverse in part, and remand for resentencing on one count of possession of stolen property.

WE CONCUR: