IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON

          Respondent,

v.

MERLIN TODD MCNEAL HEMRIC

          Appellant.

No. 84174-2-I

DIVISION ONE

UNPUBLISHED OPINION

DÍAZ, J. — In April 2022, a jury convicted Merlin Todd McNeal Hemric of one count of gross misdemeanor telephone harassment and two counts of gross misdemeanor violation of court order. The court imposed three consecutive 364-day jail sentences, one of which was suspended. Hemric appeals, complaining the trial court mishandled or exceeded its authority in ordering consecutive terms. Finding no error, we affirm.

## I.    BACKGROUND

Hemric married L.H.[1] in 2003. By 2016, L.H. sought a divorce due to Hemric's pattern of verbal abuse. This abuse included death threats against L.H., her children, and the children's father. In May 2017, Hemric was convicted of two

---

[1] We are using the victim's initials to protect their privacy.

felony offenses for crimes against L.H., stalking and telephone harassment. Hemric was sentenced to a term of incarceration and the court entered a 10-year no contact order, protecting L.H.

On December 22, 2019, L.H. received four calls from a blocked number. All of the calls came in quick succession. L.H. answered one of the calls and immediately recognized Hemric's voice. During the call, Hemric threatened her, including saying "you're dead, b[—]." Hemric also called two of L.H.'s friends. Hemric left a voicemail for one of the friends which included the phrase "watch this." The following day, L.H. contacted the police.

Hemric faced five charges, including felony telephone harassment, a lesser included charge for gross misdemeanor telephone harassment, and three counts of gross misdemeanor violation of court order. A jury trial began on April 5, 2022, during which Hemric asserted a voluntary intoxication defense. On April 8, 2022, the jury convicted Hemric of gross misdemeanor telephone harassment and two counts of violation of court order.

On May 5, 2022, Hemric came before the court to be sentenced. The State recommended all three counts be given the maximum 364-day sentence and be served consecutively. They cited Hemric's pattern of harassment and the need to protect L.H. Hemric argued for therapeutic alternatives to prosecution or, alternatively, a minimal term of incarceration where he would serve each sentence concurrently. He cited his ongoing issues with alcohol, his mental health challenges, and the care he provided his elderly mother.

During the hearing, Hemric objected to the State's introduction of various types of evidence, which he claimed had not been admitted at trial, was otherwise not in the record, or had not been provided to defense counsel.

The court imposed three consecutive 364-day jail sentences, one of which was suspended. Hemric appeals.

## II. ANALYSIS

### A. Concurrent and Consecutive Misdemeanor Sentencing

Hemric first claims that the trial court erred by not considering his argument to run each of the sentences concurrently. We disagree.

The Sentencing Reform Act ("SRA") generally requires a person convicted of two or more offenses to serve their sentences concurrently. RCW 9.94A.589(1)(a). However, the SRA applies only to felony sentencing and does not similarly restrict sentencing for misdemeanors. State v. Anderson, 151 Wn. App. 396, 402, 212 P.3d 591 (2009). As a result, courts have discretion to impose misdemeanor sentences consecutively. Wahleithner v. Thompson, 134 Wn. App. 931, 939, 143 P.3d 321 (2006). Outside of narrow constitutional or statutory limits, a sentencing judge's discretion over misdemeanors remains "largely unfettered." State v. Mail, 121 Wn.2d 707, 710, 854 P.2d 1042 (1993).

As to one of the statutory limits, RCW 9.92.080 governs consecutive and concurrent sentencing for gross misdemeanors. For a person "convicted of two or more offenses which arise from a single act or omission, the sentences imposed therefor shall run concurrently, unless the court, in pronouncing sentence, expressly orders the service of said sentences to be consecutive." RCW

9.92.080(2). Additionally, for convictions arising from "separate and distinct acts or omissions . . . the sentences imposed therefor shall run consecutively, unless the court, in pronouncing the second or other subsequent sentences, expressly orders concurrent service thereof." RCW 9.92.080(3). As such, the court has broad authority to order consecutive or concurrent sentencing for misdemeanors. The only requirement is that, where a court chooses to do so, it be done expressly.

Statutory construction is a question of law which we review de novo. Postema v. Postema Enterprises Inc., 118 Wn. App. 185, 195, 72 P.3d 1122 (2003).

Here, Hemric was convicted of three gross misdemeanors including one count of telephone harassment and two counts of violation of court order. He had no felony convictions at this trial. As such, the SRA does not apply. Further, the court expressly ordered that the sentences be served consecutively, both during the sentencing hearing and in the judgment and sentence. As the orders were express, the court complied with RCW 9.92.080.

Moreover, Hemric had the opportunity to argue for concurrent sentencing in both his sentencing memorandum and during the sentencing hearing itself. Despite this, Hemric claims that the court unlawfully disregarded his appeal for concurrent sentences. However, Hemric does not cite to any authority that requires a court to consider, on the record or in any specific way, an argument for imposing concurrent sentences for misdemeanors. Where a party fails to provide citation to support a legal argument, we assume counsel, like the court, has found

none.  State v. Loos, 14 Wn. App. 2d 748, 758, 473 P.3d 1229 (2020) (citing State v. Arredondo, 188 Wn.2d 244, 262, 394 P.3d 348 (2017)).

In short, courts have clear authority to order consecutive sentences for gross misdemeanors and are not obligated to consider, on the record or otherwise, every argument, including those advocating for a concurrent sentence, which counsel make.  As such, the court committed no error in exercising the broad discretion it has in choosing between consecutive and concurrent misdemeanor sentences, and in what it chose to consider in so deciding.

B.      Factual findings and misdemeanor sentencing

Hemric next claims that the trial court erred in making numerous findings of aggravating factors during sentencing.  On January 25, 2023, Hemric himself also submitted a Statement of Additional Grounds for Review ("SAG"), arguing that the trial judge "admit[ted] on [the] record he allowed in inadmissible testimony" during trial.

We disagree.  First, the court was not required by law to make any findings of any aggravating factors to impose its sentence.  Second, the court in fact did not make findings of any aggravating factors.   Similarly, Hermic's SAG mischaracterized the court's actions.[2]

---

[2] So framed, our analysis will focus on whether the court was required to find aggravating factors in imposing the sentence it did, and whether as a matter of law it actually did so.  Our analysis will not involve considering whether there would have been sufficient evidence to make such a finding.  As such, this issue involves a question of law which we review de novo.  Postema v. Postema Enterprises Inc., 118 Wn. App. 185, 195, 72 P.3d 1122 (2003).

The SRA requires courts to explicitly state their reasons for deviating from a standard sentencing range in written findings of fact and conclusions of law. RCW 9.94A.535. However, as discussed earlier, the SRA only applies to felonies, not misdemeanors. Anderson, 151 Wn. App. at 402; see also 13B SETH A. FINE, WASHINGTON PRACTICE: CRIMINAL LAW AND SENTENCING § 50:1 (3D ED. 2019) (In misdemeanor sentencing, "courts retain broad discretion similar to that exercised for felonies under the former indeterminate sentencing statutes."). In fact, this court has already rejected an argument that a trial court relied erroneously on factual findings to impose consecutive misdemeanor sentences. State v. Harstad, 153 Wn. App. 10, 27, 218 P.3d 624 (2009). In doing so, we stated that a "trial court has discretion to run misdemeanor sentences consecutively *even though there are no aggravating factors*." Id. (emphasis added).

Here, again, Hemric was convicted of only gross misdemeanors, no felonies. Each gross misdemeanor individually complied with the 364-day limit set by RCW 9.92.020, such that each sentence was within the statutorily maximum term. Additionally, the court had clear authority under RCW 9.92.080 and Harstad to order consecutive misdemeanor sentencing without finding any aggravating factors. Thus, the court did not err by not makings findings, which it was not required to make in the first place.

In response, Hemric cites to numerous instances where he alleges the court "determined there were the equivalence of aggravating factors" during sentencing, which he claims were unfounded. We disagree with his characterization of each such statement. The trial court did not make findings of fact for any aggravating

factor or misstate the underlying facts, but instead was simply providing its rationale for imposing the sentence it did, which is appropriate.

First, Hemric avers the court "faults [him] with 'for the first time' taking responsibility for the crimes charged at the sentencing hearing[.]" Additionally, he alleges the court was simultaneously "alluding here to [Hemric's] prior convictions . . . in contravention to double jeopardy[.]" This claim appears to be referencing the court's statements that "there was no acknowledgement at all of responsibility until today from Mr. Hemric[.]" Hemric is mischaracterizing the court's action. The court was simply stating it did not believe the sincerity of Hemric's statements of remorse made at the hearing. At no point during this observation did the court reference Hemric's prior convictions.[3]

Second, Hemric alleges that the court improperly noted his apparently "proactive" measures to "call from a blocked number[.]" Relatedly, Hemric further faults the court for improperly stating it was "unclear" whether Hemric was drunk at the time of the phone calls. This appears to be referencing the fact that the calls to L.H. and to one of her friends came from a blocked number, while calls to the other friend did not. Based on these facts, the court stated that, "although he may have been intoxicated, and it's unclear whether he was or whether he wasn't, certainly didn't impact his ability to take the affirmative action to try to hide his identity[.]" Further, the court noted that Hemric was "hiding behind [his] alcohol,"

---

[3] As to the allusion of a double jeopardy violation, passing treatment of an issue or lack of reasoned argument are insufficient to merit judicial consideration. Joy v. Dep't of Labor & Indus.,170 Wn. App. 614, 629, 285 P.3d 187 (2012) (citing West v. Thurston County,168 Wn. App. 162, 187, 275 P.3d 1200 (2012)).

as an "attempt to excuse as opposed to taking responsibility." Rather than making unfounded findings of fact, the court was merely stating it did not fully believe Hemric's intoxication defense, which the jury also apparently rejected.[4]

Third, Hemric alleges the court improperly made a "further implication of guilt" because of his mother's comments at the hearing. This claim appears to be referencing the court's statement that "[Hemeric's] mother's comments were a concern" as "perhaps that's why [Hemric] take[s] the position . . . because [Hemric's] mother is blaming [L.H.] also." The court was not finding that Hemric was somehow "more guilty" following his mother's statements. Rather, the court simply was stating uncontroversially that he was found guilty because he called L.H. "repeatedly in violation of the court order that told [him] not to do it." Further, the court correctly observed that L.H.'s alleged role in creating personal challenges for Hemric was irrelevant. Otherwise, the court's etiological statement, that perhaps Hemric is focused on L.H.'s role because of his mother, is not a finding giving rise to any error.

Fourth, Hemric alleges the court improperly considered hearsay evidence during sentencing. Specifically, he claims that the court wrongly considered an antiharassment order involving a corrections officer, to which Hemric "was not given an opportunity to defend against." This claim was factually incorrect because

---

[4] Additionally, Hemric's argues that the court's alleged findings are unfounded because "individual numbers can be blocked for long periods of time . . . thereby requiring no 'proactive' measures at the time of the calls." Somewhat ironically, however, this claim is itself without a cite to the record of any kind. Arguments that are not supported by references to the record, meaningful analysis, or citation to pertinent authority need not be considered. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

the antiharassment complaint was included in the State's sentencing memo, giving Hemric notice and an opportunity to respond to it before the sentencing hearing. Additionally, this argument mischaracterizes the court's actions. The court did not indicate any reliance on this evidence during sentencing. On the contrary, the court indicated it was appropriate for Hemric's attorney to object to the evidence, and otherwise did not reference the antiharassment order during his ruling.

Finally, Hemric's SAG claims that "Judge Weiss admits on record he allowed in inadmissible testimony, only by the state, into this trial." Hemric appears to be referring to an exchange between the court and his counsel, where the court sustained an objection to testimony related to his belief about the children's fear of him. The court did not entertain a hearsay objection let alone "admit" it erred. Instead, it found that L.H.'s testimony was partially irrelevant, but the defense failed to object or move to strike at the time. Nonetheless, the court prohibited the State from referencing that portion of L.H.'s testimony at closing argument. Again, as his counsel has done, Hemric mischaracterizes the nature of the ruling.

C.    Due process

Hemric next claims that the trial court violated his "due process" rights during sentencing by considering evidence not admitted at trial, on the record, or otherwise provided to defense counsel. Specifically, he claims that the court improperly relied on statements and communications he made while in custody, awaiting or after trial, to third parties. Additionally, Hemric objected at sentencing to a white binder introduced by the prosecution, which was allegedly not provided to defense counsel.

9

To the extent that his due process claim arises from a statutory basis, it clearly fails. The SRA "places substantial constraints on this historical discretion in felony sentencing[.]" Anderson, 151 Wn. App. at 402. However, the SRA does not similarly restrict misdemeanors, meaning "trial courts have great discretion in imposing sentences within the statutory limits for misdemeanors and gross misdemeanors." Id.

To the extent that his due process is based upon the constitution, we would review such a challenge de novo. State v. Grenning, 142 Wn. App. 518, 544, 174 P.3d 706 (2008). Hemric, however, only in the most general way claims a due process violation and does so without further elaboration or citations to authorities. Passing treatment of an issue or lack of reasoned argument are insufficient to merit judicial consideration. Joy v. Dep't of Labor & Indus.,170 Wn. App. 614, 629, 285 P.3d 187 (2012). More poignantly, "As expressed by the Eighth Circuit, 'naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" In Re Rosier, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986), superseded on other grounds, (quoting United States v. Phillips, 433 F.2d 1364, 1366 (8th Cir. 1970)).

Hemric is also again simply factually incorrect. The court did not discuss or otherwise indicate reliance on any of the information at issue beyond discussing the inapplicability of the SRA. As such, there is no indication that the court relied on this information when deciding its sentence. Further, the prosecution claimed, without objection, that the binder had been provided electronically in the same manner as regular discovery.

Finally, the defense never obtained a ruling from the trial court on its complaints. By way of analogy, "[a] defendant who does not seek a final ruling on a motion in limine after a court issues a tentative ruling waives any objection to the exclusion of the evidence." State v. Riker, 123 Wn.2d 351, 369, 869 P.2d 43 (1994); see also State v. Carlson, 61 Wn. App. 865, 875, 812 P.2d 536 (1991) (holding it is a "rule that, when a ruling on a motion in limine is tentative, any error in admitting or excluding evidence is waived").

D.      Disproportionality

Hemric's final claim is that the trial court imposed a disproportionate sentence. We disagree; the consecutive sentences were not extraordinary or disproportionate. As previously discussed, courts have wide discretion when imposing consecutive misdemeanor sentences. Harstad, 153 Wn. App. at 27. As such, the bar for showing disproportionality is exceedingly high for consecutive misdemeanor sentences. Hamric falls well short of this bar.

A sentence may be cruel under article I, section 14 of our state constitution if it is grossly disproportionate to the offense. State v. Reynolds, 21 Wn. App. 2d 179, 197, 505 P.3d 1174 (2022). "The proper inquiry under article I, section 14 is the proportionality of the individual sentences." Wahleithner, 134 Wn. App. at 938. However, this court has examined the proportionality of the aggregate sentence imposed for multiple convictions. Id.

Disproportionality is judged under the four Fain factors. Reynolds, 21 Wn. App. 2d at 197. The four Fain factors for proportionality are (1) the nature of the offense, (2) legislative purpose behind the sentencing statute, (3) punishment

imposed in other jurisdictions for the same offense; and (4) punishment imposed in the same jurisdiction for the same offense. Id. (citing State v. Fain, 94 Wn.2d 387, 397, 617 P.2d 720 (1980)). Each of these are merely factors to consider and no factor is dispositive. State v. Gimarelli, 105 Wn. App. 370, 380-81, 20 P.3d 430 (2001). Constitutional challenges to a trial court's sentencing decision are reviewed de novo. Grenning, 142 Wn. App. at 544.

As to the first factor (nature of the offense), courts consider whether the crime caused or threatened injury to persons or property. Wahleithner, 134 Wn. App. at 939. Hemric was convicted of telephone harassment, which applies to those who threaten "to inflict injury on a person or property of the person called[.]" RCW 9.61.230(1)(c). In this case, Hemric was convicted of violating a no contact order originating from his 2017 felony convictions of telephone harassment and stalking. Telephone harassment becomes a felony if it involves death threats. RCW 9.61.230(2)(b). As such, Hemric's crimes involved threatened injury to others, meaning this factor does not weigh in his favor.

As to the second factor (legislative purpose behind the sentencing statute), courts consider the statutes that authorize the relevant penalties. Wahleithner, 134 Wn. App. at 939. Telephone harassment and violation of a no contact order are gross misdemeanors with a maximum penalty of 364 days in jail. RCW 9.92.020. As already discussed, trial courts enjoy broad discretion on sentences for gross misdemeanors. Anderson, 151 Wn. App. at 402. Each of Hemric's individual offenses was sentenced within the 364-day limit for misdemeanors. Additionally, the court ordered consecutive sentencing expressly in compliance

with RCW 9.92.080. In light of the broad deference the legislature has granted courts on misdemeanor sentencing, no legislative purpose was contravened here.

As to the third factor (punishment received in other jurisdictions) Washington courts compare the statutes underlying the sentence at issue with analogous statues of jurisdictions outside of the state. Wahleithner, 134 Wn. App. at 940. Hemric did not offer a comparison to other jurisdictions in his appeal. However, telephone harassment and violation of a no contact order are both misdemeanors in Oregon and California. ORS 166.090; Cal. Penal Code 653m. Additionally, both states give their courts broad discretion in imposing consecutive or concurrent sentences. ORS 137.123; In re Claude J., 217 Cal. App. 3d 760, 763, 266 Cal. Rptr. 99 (1990). As such, this factor does not weigh in Hemric's favor.

As to the final factor (punishment imposed in the same jurisdiction), courts do a "comparison of sentencing for the current offense to the sentencing scheme in Washington." Wahleithner, 134 Wn. App. at 940-41. Disproportionality is not shown merely because a judge imposed a sentence harsher than what another judge might impose. Id. at 941. In fact, the ultimate sentence for gross misdemeanors "may even exceed the standard range for a comparable felony." Anderson, 151 Wn. App. at 402. "Only on the *very rare occasion* when a consecutive sentence is shockingly long has a court held cumulative sentences cruel and unusual." Wahleithner, 134 Wn. App. at 937 (emphasis added).

The Wahleithner court cited State v. Davis, a case from Arizona, as an example of disproportionate consecutive sentencing. State v. Davis, 206 Ariz. 377,

13

79 P.3d 64 (2003). Davis was a 20-year-old man, with no past criminal record, convicted of four counts of sexual offenses involving minors. Id. He was sentenced to four consecutive 13-year sentences, for a total of 52 years in prison. Id. The Arizona Supreme Court vacated the sentence, finding it to be unconstitutionally disproportionate. Id.

In contrast, Wahleithner was convicted of three DUIs and hit-and-run, all gross misdemeanors. Wahleithner, 134 Wn. App. at 935. He failed to comply with his probationary treatment requirements, leading the court to revoke his suspended sentence and to require he serve his remaining jailtime of 44 months. Id. This court upheld the trial court in that case, finding the punishment proportional. Id. at 942. This holding came despite Wahleithner compiling "charts and graphs" comparing sentences between judges in the same county. Id. at 941.

Hemric, in contrast, lists eight somewhat random cases in support of his disproportionality claim. A brief procedural description of each case is provided without additional analysis or comparison to Hemric's situation. Only one of the cases, State v. Armendariz, 160 Wn.2d 106, 109, 156 P.3d 201 (2007), had some similarity to Hemric's case, as it involved a violation of a court order. However, as held in Anderson, Hemric's argument that his misdemeanor sentence is harsher than a comparable felony is insufficient in itself to show disproportionality. 151 Wn. App. at 402. Further, as held in Wahleithner, an appellant cannot merely cite to variations in sentencing decisions between cases to establish disproportionality; the disparity must be "shocking." 134 Wn. App. at 937. As such, Hemric failed to

reach the high bar for showing disproportionality in his sentence, which we note suspended one of the three terms of confinement.

### III.     CONCLUSION

For the reasons stated above, we affirm.

Díaz, J.

WE CONCUR:

Chung, J.

Smith, C.J.